**Z. T. NAIFEH, dba Sooner Sales Co., Appellant,**

v.

**RONSON ART METAL WORKS, Inc., a corporation, Appellee.**

**No. 4825.**

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1954.

Ted Foster, Oklahoma City, Okl., for appellant.

G. F. Rainey, Oklahoma City, Okl., for appellee.

Before PHILLIPS, Chief Judge, MURRAH, Circuit Judge, and RITTER, District Judge.

RITTER, District Judge.

Z. T. Naifah, doing business as Sooner Sales Co.,[1] brought action against Ronson Art Metal Works, Inc.,[2] to recover treble damages for alleged violations of the Clayton Act, as amended by the Robinson-Patman Price Discrimination Act, and particularly Title 15 U.S.C.A. § 13(a) and § 13(e).[3] From a judgment in favor of Ronson, Sooner appeals.

---

1. Hereinafter referred to as Sooner.

2. Hereinafter referred to as Ronson.

3. Title 15 U.S.C.A. § 13(a) provides in part: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for * * * resale within the United States * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monoply in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *."

Title 15 U.S.C.A. § 13(e) provides: "It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers

Sooner is a wholesale distributor of cigars, tobacco, candy, specialties, lighters and drugs in Oklahoma City, Oklahoma, and in the surrounding trade area to a distance of 75 to 100 miles from Oklahoma City.

Ronson, a New Jersey corporation with its home office at Newark, is a manufacturer of cigarette lighters and lighter accessories which it sells in interstate commerce.

On December 8, 1949, Sooner gave an order for lighter accessories to Buck Powers, a Ronson agent. Thereafter, from time to time, Sooner ordered Ronson lighters and lighter accessories and upon delivery distributed them to retail dealers for resale. Each order was taken on a standard Ronson order blank, and contained the express provision that the order was not binding on Ronson until accepted by it at the home office in Newark, New Jersey. Sooner was allowed a discount from the retail list price of 50 percent plus an additional 10 percent on the balance. Sooner allowed retailers an average discount of 40 percent from list price. At no time did Ronson give Sooner any directions or instructions or impose any restrictions with respect to the prices at which the merchandise was to be sold to retailers.

For approximately two years Sooner distributed to various retailers in the Oklahoma City trading area a substantial quantity of Ronson lighters and lighter accessories. All of the orders submitted before January 30, 1952, were accepted and filled within a week or ten days.

On January 29, 1952, Powers called Sooner by telephone and arranged a meeting at a hotel in Oklahoma City. At that meeting Powers told Sooner that he would no longer be permitted to distribute Ronson products. There had been some disagreement between Sooner and Powers about whether certain items should be included in the orders, and Sooner advised the agent that orders would have to be accepted as made up by Sooner and that he would not permit Powers to make up the orders. Sooner protested the termination of the distributorship and Powers said he would call the home office. On the following morning Powers advised Sooner that the distributorship would be continued and took an order amounting to $700 or $800. This order, together with a number of orders subsequently submitted by Sooner, were never filled by Ronson. Although he had no authority to bind Ronson on any order from a wholesaler, Powers continued to inform Sooner that the orders would be filled.

By June, Sooner had a depleted stock of Ronson merchandise and was unable to fill orders from retailers. He called Ronson's home office by telephone and asked when the orders would be filled. He was told that an answer would be forthcoming in the next few days. On June 9, 1952, an official of the company wrote to Sooner and stated in part:

"At the present time we are reducing our distribution in most sections of the country, and in your market area we find that we are very well covered with distribution by other distributors.

"We therefore regret that we shall be unable to ship any further Ronson merchandise to you. This move is consistent with our current policy of reducing our distributors in all territories where we already have adequate coverage."

On June 13, 1952, Sooner informed Ronson by letter that he did not care whether he had the Ronson line any longer. A few days later Sooner made a request to the Ronson home office to take back the remaining stock of merchandise which had not been sold to re-

of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

tailers. Accordingly, Powers called at Sooner's place of business on July 3, 1952, to inventory the stock on hand. He offered to pack and ship to the home office all of the merchandise which Sooner wanted to return and to give Sooner a credit memorandum for it. Sooner was told that there would be certain deductions for transportation and handling and that some of the items would have to be depreciated. Sooner refused to return the items on the terms offered and insisted that Ronson pay cash for the merchandise before it was shipped, in some instances in amounts greater than those which Sooner had originally paid to Ronson for the same items. At the time of the trial, Sooner had disposed of about half of the remaining items on hand.

On January 29, 1952, the same day Sooner was notified that he would no longer be a distributor for Ronson products in the Oklahoma City trade area, Powers arranged with Consolidated Wholesale Company [4] to distribute Ronson products in that area and took an order from them for about $700.00 worth of merchandise. This order was filled in due course. Thereafter, Consolidated distributed Ronson's products and paid the regular retail list price for merchandise, less discounts of 50 percent plus 10 percent on the balance, the same discount terms received by Sooner prior to January 29, 1952, on the goods he had received from Ronson.

There is no evidence that Ronson discriminated in any way against Sooner, although Sooner claims that Ronson's refusal to accept and fill Sooner's orders after January 29, 1952, was a discrimination. There is no evidence that in selecting Consolidated to distribute its products and in accepting orders from

Consolidated, Ronson did anything in restraint of trade or engaged in any transaction which was not bona fide.

Sooner's position is that the conduct of the parties established him as a Ronson distributor and customer in the Oklahoma City trading area; that from January 30, 1952, until shortly after June 9, 1952, while still a customer of Ronson, he was forced to compete with Consolidated, another customer of Ronson, with a depleted and non-representative stock of Ronson lighters and lighter accessories. This disadvantage, Sooner claims, was the direct result of Ronson's withholding delivery of goods ordered by Sooner, at the same time it was making regular delivery of goods of like grade and quality to a competing purchaser. Sooner claims that the failure to provide him with goods while providing them to Consolidated was an indirect price discrimination in violation of Section 13(a) of the Act, just as if the goods had been delivered at a discriminating price, and that the failure to ship a supply of new stock to replenish and maintain a representative line was a service discrimination in violation of Section 13(e) of the Act. With this contention we cannot agree.

The trial court concluded that Ronson's conduct was not within the prohibition of either the price or the service provisions of the Act and accordingly entered judgment in favor of Ronson. The court reasoned that a seller must discriminate in price or service in favor of one purchaser over another competing purchaser in order to constitute a violation of Section 13(a) or Section 13(e) of the Act, and that if there are not two or more competing purchasers, there can be no violation of the Act.[5] Since all orders submitted by Sooner were not bind-

---

4. Hereinafter referred to as Consolidated.

5. Bruce's Juices v. American Can Company, 1946, 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219; Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 1949, 176 F.2d 1; General Shale Products Corporation v. Struck Construction Co., 6 Cir., 1942, 132 F.2d 425; U. S. v. Borden Co., D.C., 1953, 111 F.Supp. 562, and A. J. Goodman & Son v. United Lacquer Mfg. Corp., D.C., 1949, 81 F.Supp. 890, 892, where the court said: "Here there is only one purchaser * * *. It is not enough that a prospective purchaser, the plaintiff, would have had to pay a higher price if it did buy. There must be actual sales at two different prices to two different actual buyers."

ing on Ronson until accepted by it at the home office in Newark, under the express terms printed on each order, the failure of Ronson to accept orders after January 29, 1952, made Sooner no more than a past purchaser seeking to become a prospective purchaser. Accordingly, Sooner, not being a present purchaser during the period in question, could not qualify under the Act and therefore could not complain of Ronson's refusal to sell.[6]

While we agree with the reasoning of the trial court, we believe that an additional provision of the Clayton Act fully disposes of this case.

██ By the express terms of the Act,[7] Ronson had the right to do business with whom it pleased. As a private trader in interstate commerce, Ronson not only could select its own customers but also could refuse to sell its merchandise to anyone and by so doing would in no way violate the anti-trust laws.[8] It is settled law that a seller may either refuse to negotiate or may cease doing business with a customer without running afoul of the Act. It is also clear, however, that if a seller chooses to negotiate and to sell goods of like grade and quality to competing customers, he cannot discriminate in price or services either to the advantage of one purchaser or to the disadvantage of another.[9]

 In this case Ronson sold its merchandise to Sooner for many years

6. Shaw's, Inc., v. Wilson-Jones Co., 3 Cir., 1939, 105 F.2d 331, 333, where the court said: "The discrimination in price referred to must be practiced 'between different purchasers'. Therefore at least two purchases must have taken place. The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase, a person who goes into the marketplace for the purpose of purchasing. In other words, it does not mean a prospective purchaser, or one who wishes to purchase * * *. Past purchases or conversations in respect to possible future purchases are insufficient." Chicago Seating Co. v. S. Karpen & Bros., 7 Cir., 1949, 177 F.2d 863; and Sorrentino v. Glen-Gery Shale Brick Corp., D.C., 1942, 46 F.Supp. 709, 711, where the court said: "Plaintiff's arguments that his past purchases from Glen-Gery make him a 'purchaser' within the meaning of this section and that defendant manufacturers' refusal to sell him while selling to Margolis [a competitor] constitutes a 'discrimination' between 'purchasers' in violation thereof cannot be sustained."

7. Title 15 U.S.C.A. § 13(a), provides in part: "That nothing contained in sections 12, 13, 14–21, and 22–27 of this title shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade * * *."

8. Johnson v. J. H. Yost Lumber Co., 8 Cir., 1941, 117 F.2d 53, 61, where the court said: "It must be borne in mind that one engaged in private enterprise may select his own customers, and in the absence of an illegal agreement, may sell or refuse to sell to a customer for good cause or for no cause whatever." Green v. Victor Talking Mach. Co., 2 Cir., 1928, 24 F.2d 378, 59 A.L.R. 1091.

9. Chicago Seating Co. v. S. Karpen & Bros., supra [177 F.2d 866], where it was said: " * * * defendant refused to sell to plaintiff. Even if true such charges do not constitute discrimination in favor of one purchaser against others under the provisions of the Clayton Act. * * * As we see it, the laws of the United States do not require that persons engaged in private trade and commerce must deal with everyone. When they do deal they may not discriminate, but they do have the right to choose their customers. * * * A trader engaged in private business may exercise his own discretion as to parties with whom he will deal."
Shaw's, Inc., v. Wilson-Jones Co., supra, where the court said: "The Act does not compel a seller of commodities to offer them to all persons who may wish to bid upon a contract to resell them to a third party. The discrimination in price prohibited by the subsection is discrimination in respect to commodities sold to purchasers."
In holding that a service discrimination under Section 13(e) of the Clayton Act as amended by the Robinson-Patman Act had taken place, Judge L. Hand in Sun Cosmetic Shoppe v. Elizabeth Arden Sales Corp., 2 Cir., 1949, 178 F.2d 150, 152, 13 A.L.R.2d 358, said: "The Act does not undertake to forbid a seller to grant favors to his customers, any more than it undertakes to compel him to grant them; it only insists that the distribution, if any, shall be equal."

and in January of 1952 decided to terminate their business relationship. Accordingly, it did not fill Sooner's orders after that time. The trial court found that Ronson had neither accepted the order of January 30, 1952, nor any of the orders submitted by Sooner after that date. Inasmuch as there was no basis either contractually or otherwise, whereby Ronson was bound to fill such orders, Ronson's conduct was not in violation of the Act. When the order was not filled within the effective time, Sooner was bound to know that it had not been accepted. There generally is no duty on the part of the person to whom an offer to purchase is made to notify the offeror of his refusal to accept the offer. And further, no presumption of acceptance arises from a failure to so notify.[10]

Of course, Sooner was left with a depleted stock and some slow moving items, but that was a hazard Sooner necessarily took under the terms of the informal distributorship arrangement which had existed prior to January 30, 1952. Moreover, Ronson offered to permit Sooner to return the items which he did not wish to retain, at the price Sooner had paid therefor, less a transportation and handling charge and depreciation on certain items. This offer Sooner rejected.

Congress has been liberal in enacting remedies to enforce the anti-trust legislation. However, in no instance has it indicated an intention to interfere with ordinary commercial practices in interstate commerce which are bona fide and not in restraint of trade. The right of a manufacturer to select customers is an essential factor in maintaining high standards of service in the handling of his products. The Supreme Court of the United States has said that it is "loath to deny * * * this privilege of selection",[11] and this court is constrained to exercise the same restraint.

The court in Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co.[12] expressed the policy applicable to this case when it said: "We have not yet reached the stage where the selection of a trader's customers is made for him by the government."

For the reasons herein set forth the judgment is affirmed.

---

10. 77 C.J.S., Sales, § 28, p. 643; Reliance Bagging Co. v. Electric Gin Co., 1945, 208 Ark. 829, 187 S.W.2d 724.

11. U. S. v. Bausch & Lomb Optical Co., 1944, 321 U.S. 707, 64 S.Ct. 805, 816, 88 L.Ed. 1024.

12. 2 Cir., 1915, 227 F.2d 46, 49.