HARTLEY & PARKER, INC., Appellant,

v.

FLORIDA BEVERAGE CORPORATION
and American Distilling Company,
Appellees.

No. 19123.

United States Court of Appeals
Fifth Circuit.

Aug. 31, 1962.

Rehearing Denied Nov. 19, 1962.

John B. Orr, Jr., Orr & Lazar, Miami Beach, Fla., for appellant.

Samuel W. Shapiro, Friedman & Shapiro, Miami, Fla., for appellee, Florida Beverage Corp., a Florida corporation.

Robert Ward, W. G. Ward, Miami, Fla., Edward S. King, New York City, Ward & Ward, Miami, Fla., for appellee, The American Distilling Co.

Before RIVES, JONES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

Hartley & Parker sued American Distilling Company, (hereafter American Distilling) and Florida Beverage Corporation (hereafter Florida Beverage) to recover treble damages for alleged violations of the Clayton Antitrust Act of October 15, 1914, 38 Stat. 730, as amended by the Robinson-Patman Price Discrimination Act of June 19, 1936, 49 Stat. 1526. The district court denied the motion to dismiss for lack of jurisdiction over American Distilling, but dismissed the action without prejudice on the motions of both defendants to dismiss for failure to state a claim on which relief can be granted.

[■■] American Distilling transacts business in interstate commerce, distilling, selling and shipping packaged alcoholic beverages throughout the United States. It maintains no plant or office in Florida. Continuously since prior to 1948 American Distilling, as a part of its interstate commerce, has shipped, sold and delivered into southeast Florida packaged alcoholic beverages for sale to and consumption by the public in Dade and other counties. Its sales to Hartley & Parker alone from January 1, 1956 through July 31, 1960 amounted to $2,874,530.28. American Distilling employs and has for a number of years employed three "missionary or good will" men, whose duties are to "associate with the distributor's salesmen, on occasion accompanying them on their calls to retail accounts, and attempt to promote the sale of American's products." [1] Irrespective of these "missionary or good will" men, this Court is committed to the proposition that a corporation doing a purely interstate business, which ships into a judicial district and delivers and sells substantial quantities of its products, "transacts business" in that district within the meaning of 15 U.S.C.A. § 22.[2] Green v. United States Chewing Gum Mfg. Co., 5 Cir., 1955, 224 F.2d 369; see also Pape Television Co. v. Associated Artists Production Corporation, 5 Cir., 1960, 277 F.2d 750; Brandt v. Renfield Importers, Ltd., 8 Cir., 1960, 278 F.2d 904. We conclude that the district court had jurisdiction over American Distilling.

Hartley & Parker and Florida Beverage are competitors in Dade County and other counties in southeast Florida as

1. These facts as to the "missionary or good will" men appear in affidavits introduced by American Distilling.

2. "§ 22. *District in which to sue corporation*

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

purchasers and wholesale distributors of packaged alcoholic beverages. During the twelve-year period from 1948 to August 1, 1960, Hartley & Parker was the sole and exclusive wholesale distributor of some, but not all, of the products of American Distilling in the southeast Florida market. Commencing August 1, 1960, American Distilling established a dual distributorship of its products in the southeast Florida market and appointed Florida Beverage as co-distributor with Hartley & Parker. The complaint attempted to charge three different discriminations in the prices or services of American Distilling as between Hartley & Parker and Florida Beverage.

### FIRST DISCRIMINATION

Hartley & Parker learned from various retail liquor dealers in the area that Florida Beverage was wholesaling products of American Distilling at prices below those charged Hartley & Parker. After investigation, Hartley & Parker learned that American Distilling had established prices for its sales to Florida Beverage substantially below prices theretofore charged Hartley & Parker for like quantities of the same products. Hartley & Parker asked American Distilling for similar price concessions or else that it cease making discriminatory sales to Florida Beverage. American Distilling refused to modify or adjust the prices quoted Hartley & Parker and refused to correct the discriminatory treatment afforded to Florida Beverage. The complaint averred that:

"From January 1, 1956, through July 31, 1960, the Defendant, American Distilling Company, sold its bottled products to the Plaintiff in the following dollar volumes:

| "1956 | $570,933.04 | gross | purchases |
|---|---|---|---|
| "1957 | 566,122.01 | " | " |
| "1958 | 596,038.65 | " | " |
| "1959 | 698,070.89 | " | " |
| "Jan.–July, 1960 | 443,385.79 | " | " |

a total amount of $2,874,530.38. There were no sales from August 1, 1960, up to and including the date of filing of this second amended complaint, by reason of the facts alleged herein."

Since August 1, 1960, American Distilling has sold its products to Florida Beverage at prices substantially lower than the prices then offered to Hartley & Parker, and at which Hartley & Parker had made purchases prior to August 1, 1960. As a result Florida Beverage resold the products to retail liquor dealers throughout the southeast Florida market at prices substantially lower than the prices and often below the cost of Hartley & Parker.

On their face, the averments of the complaint which we have paraphrased would seem to charge a violation of that part of 15 U.S.C.A. § 13(a) which reads:

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or pre-

vent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *."

■ The complaint charges that the discriminatory prices were established by American Distilling for the purpose of destroying competition with Florida Beverage and eliminating Hartley & Parker as its sole competitor; that Florida Beverage conspired with American Distilling to that end and knowingly induced and received the price discriminations. Thus, on its face, the complaint charges a violation against Florida Beverage.

"(f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section." 15 U.S.C.A. § 13(f).

The defendants insist, however, that the complaint shows on its face that the alleged violations come within the exceptions or provisos to section 13(a), as follows:

"*And provided further,* That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: *And provided further,* That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned."

■ Since all of Hartley & Parker's actual purchases were prior to August 1, 1950, and all of the purchases by Florida Beverage were after that date, the defendants insist that the complaint fails to show that there were two purchasers of the goods at or about the same time, and that one purchaser received discriminatory advantages which were denied to the other purchaser. In support of that insistence the defendants rely on Shaw's, Inc. v. Wilson-Jones Co., 3 Cir., 1939, 105 F.2d 331; Chicago Seating Co. v. S. Karpen & Bros., 7 Cir., 1949, 177 F.2d 863; Klein v. Lionel Corporation, 3 Cir., 1956, 237 F.2d 13; and Naifeh v. Ronson Art Metal Works, 10 Cir., 1954, 218 F.2d 202.

In Shaw's, Inc. v. Wilson-Jones Co., supra, the seller simply refused to quote prices to a former customer, and instead sold to its competitor. In Chicago Seating Co. v. S. Karpen & Bros., supra, the plaintiff predicated its action upon the defendant's refusal to furnish it a price list of specially designed items of furniture manufactured by the defendant, and upon its refusal to sell such items to the plaintiff. In Klein v. Lionel Corporation, supra, Lionel sold toy electric trains and accessories to jobbers, middlemen and to some retailers. Klein was a retailer to whom Lionel refused to sell, and Klein purchased from jobbers or middlemen. The court held that the necessary requisite of two purchasers from the same seller had not been met and therefore that Klein could not claim the protection of the Clayton Act and the Robinson-Patman Act. Of the cases relied on, Naifeh v. Ronson Art Metal Works, supra, is the only one bearing any resemblance to the present case.

In that case the plaintiff had been a distributor of cigarette lighters and lighter accessories manufactured by Ronson. Ronson changed to another distributor to whom it sold at the same prices and on the same terms theretofore charged the plaintiff. Ronson also offered to permit the plaintiff to return such items of his depleted stock as he did not wish to retain at the prices paid by plaintiff less a transportation and handling charge and depreciation on certain items, and the plaintiff rejected that

offer. We agree with the court's statement of the law, that:

"By the express terms of the Act, Ronson had the right to do business with whom it pleased. As a private trader in interstate commerce, Ronson not only could select its own customers but also could refuse to sell its merchandise to anyone and by so doing would in no way violate the anti-trust laws. It is settled law that a seller may either refuse to negotiate or may cease doing business with a customer without running afoul of the Act. It is also clear, however, that if a seller chooses to negotiate and to sell goods of like grade and quality to competing customers, he cannot discriminate in price or services either to the advantage of one purchaser or to the disadvantage of another." 218 F.2d at p. 206.

■ The evil at which the Robinson-Patman Act is aimed is discrimination between different competing purchasers, where the effect of such discrimination may be substantially to lessen competition or to tend toward a monopoly in commerce. For that evil to exist there must, of course, be at least two different competing purchasers. The purpose of the Act would be defeated, however, if it were given so strict a construction as to require two actual purchases at precisely the same time. In 1959, Hartley & Parker had made purchases amounting to $698.070.89 from American Distilling. From January to July 1960, it had purchased $443,385.79. Under the complaint it had a right to prove, if it could, that it had a substantial stock on hand on and after August 1, 1960, and that in selling that stock it was in present and active competition with Florida Beverage. The complaint further alleged that:

"Plaintiff has lost the business and patronage of retail liquor dealers throughout the southeastern Florida market, who have advised Plaintiff that the price differential between Plaintiff's prices during the period of its exclusive distributorship and prices established by the Defendant, Florida Beverage Corporation, from and after August 1, 1960, establish that Plaintiff had gouged its customers with inflated prices; so that these customers curtailed (and in some cases ceased) purchases of Plaintiff's other wholesale merchandise with respect to liquors and beverages other than those involved in this action."

■ Under the Robinson-Patman Act, American Distilling could not lawfully grant Florida Beverage price discriminations over its competitor, Hartley & Parker, which would injure or destroy Hartley & Parker. Certainly it could not do so for that purpose and with that intent as alleged in the complaint. American Distilling's right even to select its own customers is qualified to the extent that the transactions must be in good faith and not in restraint of trade. 15 U.S.C.A. § 13(a).

■ Moreover, there was certainly some period after August 1, 1960, in which Hartley & Parker was led to believe that it was a co-distributor with Florida Beverage. How long that period continued, and when, if ever, American Distilling's conduct amounted to a refusal to sell to Hartley & Parker are matters of proof. So long as Hartley & Parker had a right to consider itself a co-distributor with Florida Beverage, the Robinson-Patman Act forbade American Distilling to discriminate in price between them.

■ The district court expressed the further view that Hartley & Parker had not sufficiently averred any damages claimed by it. The complaint averred that Hartley & Parker had been deprived of the earnings and profits that it would have received but for the defendants' unlawful practices, and that it had suffered great and irreparable damage to its business reputation, prestige and good will as a result of the price discriminations. That is enough. The complaint need not particularize the damage suffered from each particular act, for that

is a matter of proof.[3] If the defendants by their own wrongs have prevented a precise computation, a just and reasonable estimate of the damages based on relevant data is permissible. Bigelow v. RKO Radio Pictures, 1946, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652; cf. Hoyt v. United States, 5 Cir., 1961, 286 F.2d 356, 360, 361.

## SECOND DISCRIMINATION

■ The second alleged discrimination is charged in the complaint as follows:

"In furtherance of the sale of the Defendant, American Distilling Company's bottled products to the Defendant, Florida Beverage Company, as herein alleged, the Defendant, American Distilling Company, from and after August 1, 1960, has supplied the Defendant, Florida Beverage Corporation, with promotional and advertising services, materials, and facilities, and has paid for and purchased promotional and advertising services, materials, and facilities for the Florida Beverage Corporation's use and benefit and in consideration of the Florida Beverage Corporation's sale and distribution of its products, without offering the same services, materials, and facilities to Plaintiff on proportionally equal terms. In part, the aforesaid promotional and advertising services, materials, and facilities consisted of distribution of ball point pens and high-ball and other glassware and decanters to be redistributed without cost to the Florida Beverage Corporation's customers so as to induce them to do business with the Florida Beverage Corporation instead of the Plaintiff, and to so eliminate competition between Plaintiff and the Florida Beverage Corporation; thereby violating Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 USC Section 13(d) and (e). Said discriminations in services, materials, and facilities were knowingly induced and/or received by the Defendant, Florida Beverage Corporation; thereby violating Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 USC Section 13(d), (e) and (f)."

■ It is difficult to see how violations of 15 U.S.C.A. § 13(d) (e) and (f)[4] could be more precisely charged. True, there is no averment that Hartley & Parker requested the services, materials and facilities. Requests by either or both distributors, and the necessity vel non for such requests, are matters of proof going to show whether the services, materials and facilities were accorded to

3. Encore Stores, Inc. v. May Department Stores Co., S.D.Calif., 1958, 164 F.Supp. 82, 86.

4. "Payment for services or facilities for processing or sale
"(d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

"Furnishing services or facilities for processing, handling, etc.
"(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

"Knowingly inducing or receiving discriminatory price
"(f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

or were available on equal terms to both Hartley & Parker and Florida Beverage.

### THIRD DISCRIMINATION

The third alleged discrimination is charged in the complaint as follows:

"Commencing on or about March 1, 1958, and up to and including the present time, the Defendant, American Distilling Company, sold and continues to sell the below-named brands of packaged intoxicating liquors to the Defendant, Florida Beverage Corporation, at prices substantially and unreasonably lower than prices charged Plaintiff for comparable brands of packaged alcoholic products. Upon information and belief, the products so sold to the Florida Beverage Corporation are identical to products sold to the Plaintiff at higher prices with different labels, said scheme constituting an attempt to evade the provisions of the afore-cited price discrimination laws by use of different labels, brand and trade names for identical products.

"Upon information and belief, Florida Beverage Corporation's salesmen sold the below-named products at wholesale to various retail liquor dealers in the southeastern Florida market, upon the express representation that said products were in reality higher priced nationally advertised brands such as Guckenheimer Bar Blend and Touarscki Vodka packaged and labeled under different trade names. Plaintiff further alleges that the identical blend of whiskey is distilled by American Distilling Company at its plant and bottled under two different labels for the express purpose of establishing discriminatory pricing in various geographic locales, including the southeastern Florida market. Said sales, made in interstate commerce, violate Section 2 of the Clayton Act as amended by the Robin-son-Patman Act, 15 U.S.C.A. § 13 (a).

"The Defendant, Florida Beverage Corporation, conspired with the Defendant, American Distilling Company, to receive the unlawful price discriminations hereinabove alleged, and did knowingly induce and/or receive said price discriminations, and thereby violated Section 2 of the Clayton Act as amended by the Robin-son-Patman Act, 15 U.S.C.A. § 13 (f).

"Among the products illegally sold in interstate commerce as herein alleged are the following:

"Semka Vodka (Tovarscki Vodka).

"Old American Blended Whiskey (Guckenheimer Bar Blend).

Hartley & Parker's counsel plaintively urge:

" 'Grade and quality' of alcoholic beverages depend on alcoholic content, flavorings, refinements and distilling, etc., rather than on names and labels. To paraphrase, 'Four Roses, by any other name, would still swill the same.' "

This third alleged discrimination covers a period since March 1, 1958. From that date to August 1, 1960, there seems to be no argument but that Hartley & Parker and Florida Beverage were competing purchasers from American Distilling as to some of its products, though Hartley & Parker was the exclusive distributor of others. The defendants urge that there is no averment that Hartley & Parker offered to purchase any of the liquors under the cheaper brand names. That is a matter of proof as to whether there was actually any discriminatory pricing. The charge in the complaint is sufficient.

The judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.