**DANIELS TOWING SERVICE, INC., a Florida corporation and the TUG SALLY MAC and Osceola Trading Company, Claimant Owner, Plaintiffs-Appellants,**

v.

**NAT HARRISON ASSOCIATES, INC., a Florida corporation, Defendant-Appellee.**

No. 29623
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1970.

Rehearing Denied Nov. 17, 1970.

* [1] Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Reginald M. Hayden, Jr., Miami, Fla., for appellants, Fowler, White, Humkey, Burnett, Hurley & Banick, Miami, Fla., of counsel.

Raymond T. Greene, Miami, Fla., for appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this maritime action involving claims against a tug for damage to three scows, the district judge had to base his award of damages upon a reasonable estimate in a complex fact situation where the determination of the precise amount of the damages which were attributable to the negligence of the tug was not possible. Justice will not allow the inability of a claimant to furnish an exact measure of the damages resulting from a tortious wrong to defeat all right of recovery. We affirm.

Daniels Towing Service, Inc. (Daniels), commenced this suit against Nat Harrison Associates, Inc. (Harrison), for towing and lay-time charges of the tug SALLY MAC, owned by Osceola Trading Company and chartered to Daniels. The parties stipulated that the towage and lay-time amounts sued for were due and payable to Daniels by Harrison. Harrison, however, filed a cross-complaint against Daniels and the tug SALLY MAC for damage to the chartered barges SEA SCOW 1500 (SEA SCOW), HUGHES 46, and AN-DROS.

Daniels and the SALLY MAC denied any liability. Befitting the maritime character of the case, the suit was tried before the district judge without a jury.

The basic facts relating to the suit are not in dispute. Harrison had chartered the barges to carry rock and heavy cargo from Miami to Autec, a Harrison project in the Bahama Islands and had contracted with Daniels to perform tow-age. On a number of occasions pertinent to this action the SALLY MAC towed the SEA SCOW to its Bahama destination, whereupon Harrison tugs would moor her and move the barge about.

During the period of Harrison's charter the SEA SCOW went aground during Hurricane Betsy while in the control of Harrison and was grounded on several other occasions—some attributable to Daniels and others attributable to Harrison.

The liability ultimately fixed by the district court with respect to the SEA SCOW flowed from incidents occurring on July 5 and 6, 1965. At those times the SEA SCOW, while being towed by the SALLY MAC, was grounded five times, once upon a coral reef which tore a hole in the after starboard side. Surveyors in Miami assessed this latter item of damage alone at 2,163.00 dollars. Upon returning the SEA SCOW to its owners, Harrison was required to pay 75,704.00 dollars for damages sustained during the charter period. In its counterclaim Harrison sought indemnity from Daniels and the SALLY MAC for 72,663.00 dollars of this SEA SCOW loss.

The facts with respect to the barge HUGHES 46 are substantially the same, showing numerous reports of groundings, some while the barge was in the charge of Daniels and under tow by the SALLY MAC and others while the barge was within the exclusive care and control of Harrison. However, after an initial hearing the court found that on December 1, 1965, the HUGHES 46 grounded while in the tow of the SALLY MAC and that the damages due to this single incident were reasonably established at 8,350.00 dollars.

The district court also found at its initial hearing that the ANDROS broke loose from its moorings and sustained the damages sued for in its name. But the court further found that the proof adduced to that point in the trial process did not establish, with sufficient clarity to support a verdict, whether this negli-

gent mooring was the fault of Harrison or the SALLY MAC. The court also initially concluded that on four occasions the SALLY MAC had damaged the SEA SCOW but that the evidence then before the court was insufficient to determine what part of the claimed SEA SCOW damages were attributable to these incidents.

After taking additional evidence the trial court supplemented its prior findings by adjudicating the liability of Daniels and the SALLY MAC flowing from damages to the SEA SCOW at 40,000.00 dollars. It also absolved them of any liability with respect to the barge ANDROS.

Daniels and the SALLY MAC appealed on the grounds that the trial court erred as a matter of law in finding any liability at all with respect to the SEA SCOW and HUGHES 46 claiming that there was insufficient evidence to support the verdict and that the attribution of any part of these damages to them was based upon inexact estimates and speculation.

■ We begin our reasoning with the well settled admiralty rule that the clearly erroneous stricture of Rule 52(a), F.R.Civ.P. binds the appellate court. In McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954) the Supreme Court described our role thus:

> In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A. * * * A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."

■ Is the judgment before us within the ambit of the clearly erroneous

standard? Although the appellant launches a vigorous broadside against the findings of the lower court, after a careful examination of the entire record the simple answer must be: yes, because we are not left with the definite and firm conviction that a mistake has been committed. Nor can we conclude that the district judge unfairly weighed the evidence. As is often the case—and the instant record is a prime example—a trial judge must make difficult choices among the options presented by multiple fact contentions of the parties before him. In such situations the trial and appellate function is markedly different. In this court:

> [t]he problem faced is more nearly that of determining whether the trial judge, faced with the choice—often hard choices between competing versions of simple or complex occurrences —has fairly weighed the matter and reached a conclusion which seems substantial and reasonable *even though another result might have been achieved either by him or others.* Ohio Barge Line, Inc. v. Oil Transport Co., 280 F.2d 448, 449 (5th Cir. 1960) (emphasis added).

In short—we just don't retry cases here.

This analysis is not entirely dispositive of the case sub judice. It is true that neither the trial judge nor the counter claimant was able to apportion the separate amounts of the damage caused by the various sources with anything approaching mathematical certainty or exactness. No individual surveys or appraisals were made as each incident of damage occurred. In fact, the evidence tended to show that establishing a basis for such precision would have required expenditures far in excess of the damages themselves. The judge necessarily had to mete out damages under circumstances where a clear-cut apportionment was impossible.

■■ Imprecise apportionment, however, will not prevent a verdict from being rendered under circumstances such as were here present. Indeed, this

circuit has indicated that to allow a tort feasor to avoid paying damages because such damages were to some necessary extent imperfectly established would be unjust and unbearable. ABC-Paramount Records, Inc. v. Topps Record Distributing Co., 374 F.2d 455 (5th Cir. 1967). There we relied upon Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652, 660 (1946), in which the Supreme Court noted that in those cases where exact loss is unascertainable, a just and reasonable estimate of the damage based on relevant data may be made and the verdict rendered accordingly. *See*, Hartley & Parker, Inc. v. Florida Beverage Corp., 307 F.2d 916 (5th Cir. 1962).

 The appellant points out that the trial court cited Moran Towing Corp. v. M. A. Gammino Const. Co., 244 F.Supp. 729 (D.R.I.1965) to support the proposition that damages based on conjecture or speculation are not recoverable. This truism is not dispositive of the issue here. In those situations where the evidence establishes a negligent wrong has occurred but its exact monetary extent is merged in other losses, the victim should not be precluded from all recovery of damages simply because explicit apportionment is impossible. This is borne out most forcefully by the final chapter of the subsequent history of *Moran*, supra, in which the First Circuit held that once illicit damage of consequence is established the burden of segregating damages should be on the negligent party. Moran Towing Corp. v. M. A. Gammino Const. Co., 409 F.2d 917 (1969). Under this theory it was Daniels and the SALLY MAC not Harrison who failed to prove their case. In admiralty, with equal certainty as in civil tort law, a negligent actor will not reap a windfall because the results of his wrongful actions became commingled with the acts of another.

Affirmed.

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.