Hedayat ZOLFAGHARI, Fakr Riahi–Amini, Parviz Azmoun, Pari Azmoun, Massoud Djahanbani, Kaveh Farboud, Parvaneh Farboud, Parviz Khabir, Manijeh Khabir, Issa Malek, Amir F. Momtaz, Mohammad R. Momtaz, Shaheen Masseri, as Trustee for Nazari and Shirin Atabaki, Faradj Panahy, as Trustee for his daughter Yasmin Panahy, Lili C. Panahy, as Trustee for Nosrat Mahmoudi Chaicar, Nini Tavallali, as Trustee for Nosrat Mahmoudi Chaicar; Nini Tavallai, Jalal C. Tavallali, Plaintiffs–Appellants,

and

Batool Tajbaksh, Feresteh Razaghitajbaksh, Manoucher Tajbaksh, Plaintiffs,

v.

Houshang I. SHEIKHOLESLAMI, Moore, Libowitz & Thomas, a Partnership of Richard W. Moore, Michael S. Libowitz and Steven A. Thomas, Howard S. Margulies, Jenkins & Block, a Partnership of Robert Jenkins and Bruce Block, Mark Greenberg, Charlotte Clott, Alisa L. Clott, Defendants–Appellees.

No. 89–2460.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1990.

Decided Aug. 22, 1991.

Jan Schneider, Robert Alan Burka, Knopf & Burka, Washington, D.C., argued (Morton A. Sacks, Cable, McDaniel, Bowie & Bond, Baltimore, Md., on brief), for plaintiffs-appellants.

Robert Wilson Hawkins, Ginsburg, Feldman and Bress, Washington, D.C., argued (John C. Grabow, Ginsburg, Feldman and Bress, Washington, D.C., on brief for defendant-appellee Sheikholeslami; Samuel Blibaum, Daniel W. Quasney, Wartzman, Omansky, Blibaum & Simons, Baltimore, Md., on brief, for defendant-appellee Greenberg; Ronald W. Fuchs, Eccleston and Wolf, Baltimore, Md., on brief, for defendant-appellee Margulies; Paul W. Grimm, Terri Lee Reicher, Jordan, Coyne, Savits & Lopata, Baltimore, Md., on brief, for defendant-appellee Jenkins & Block; Kieron F. Quinn, J. Stephen Simms, Quinn, Ward and Kershaw, P.A., Baltimore, Md., on brief, for defendant-appellee Moore, Libowitz & Thomas; Robert B. Schulman, Schulman, Treem, Kaminkow & Gilden, Baltimore, Md., on brief, for defendant-appellee Clott) for defendants-appellees.

Before HALL, PHILLIPS and MURNAGHAN, Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

The First American Mortgage Corporation (FAMCO) was a substantial enterprise that engaged in multiple frauds. It was

ostensibly in the business of originating and servicing second mortgages, and of selling the mortgages and interests in mortgage pools to investors. Often its loans were improper. It misrepresented the nature and safety of its mortgages, and it sold the same mortgages more than once to several different investors. Its collapse precipitated considerable litigation from defrauded corporate investors. Michael Clott, the mastermind of FAMCO, is currently serving a 12 year prison sentence, and criminal charges are either pending or have led to the incarceration of several of his top lieutenants.

■ The plaintiffs in this action, who have advanced securities act and Racketeer Influenced Corrupt Organization (RICO) act claims, are not among the class of sophisticated institutional investors. They are a group of Iranian immigrants, many of whom do not even speak English. Some of them may have been dispossessed of their life savings by the FAMCO enterprise. As the district court has recognized, common law fraud may well have existed. Yet, of course, when assessing whether there has been a breach of the federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, that is not enough. The defendants against whom RICO charges have been leveled are natural persons who were associated with FAMCO in various capacities. At the summary judgment stage, we take it that any of the defendants could have been in a position to stop FAMCO in its tracks and that each of them was in a position to blow the whistle. The defendants variously contend that they were ignorant of FAMCO's wrongdoing, that they believed Michael Clott's protestations of rectitude, that they thought discovered irregularities were isolated, and, moreover, that they owed no duty to the plaintiffs and the public.

As frequently in the case of fraud, there is no direct evidence that the defendants intended to commit fraud. The district court found that a "fair minded" jury could not find criminal intent, and so granted defendants' motion for summary judgment as to the RICO counts.

The plaintiffs, to establish a RICO claim, chose between two courses of proceeding. They sought to prove, but failed to do so sufficiently to withstand summary judgment, that there was a criminal association-in-fact separate from FAMCO. They did not pursue, but might have succeeded in showing, enough disputed facts to survive summary judgment, proceeding on a theory that FAMCO's affairs, affecting interstate commerce, had been conducted directly by the defendants or some or one of them through a pattern of racketeering activity.

Having earlier held that FAMCO investment instruments were not "securities," there being no further federal claims or diversity jurisdiction, the district court dismissed the suit. The instant appeal was then filed.

## I. RICO

The plaintiffs attacked on the basis of 18 U.S.C. § 1962(c) which states that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

There are two manners of doing so. The plaintiffs could have sought to prove that FAMCO was an interstate enterprise infiltrated by one or more of the defendants to conduct its affairs through a pattern of racketeering activity. Or the plaintiffs could have endeavored to show the defendants had participated in an ongoing criminal organization amounting to an enterprise of individuals and entities associated in fact to engage in fraudulent acts. *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir.), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982).

Although the reach of RICO has been extended to include wholly illegal organizations, *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the original core purpose of the Act was to prevent and remedy the criminal misuse of legitimate businesses. *See* D. Smith & T.

Reed, *Civil RICO,* ¶ 3.01 (1990). So legality or illegality of FAMCO, on which the efforts of the plaintiffs were focused, under § 1962(c), was not an essential question requiring decision. Nevertheless, in pleading and pursuing their case, the plaintiffs have sought to prove that there was in being a criminal association-in-fact separate from FAMCO-as the "association in fact". *United States v. Griffin.*[1]

█ The plaintiffs, in short, did not choose to pursue a supportable route to avoid summary judgment against them, and we should not replead their case for them.[2] Rather, they have pled and structured their case as alleging that the defendants' enterprise was an associated-in-fact illegal enterprise.

█ The district court granted summary judgment as to the claims for the defendants because it believed that "the facts of record here 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" (quoting *Matsushita Electric Industrial Co. v. Zenith,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Although the district court accepted that there was evidence that the defendants' acts may have constituted common law fraud, it determined that there was not more than a "scintilla" of evidence that the defendants acted with the specific intent to participate in the overall RICO criminal enterprise.

## II. SECURITIES FRAUD

In dismissing the plaintiffs' claims under federal securities laws, the district court relied on cases holding that "FAMCO-originated mortgage loans are not 'securities' as defined by both federal and state law." *E.g., First Financial Federal Savings and Loan Ass'n v. E.F. Hutton Mortgage Corp.,* 652 F.Supp. 471 (W.D.Ark.1987), *aff'd,* 834 F.2d 685 (8th Cir.1987). It was understandable that the district court did so. In their complaint, the plaintiffs referred to their understanding that they were buying "notes secured by first mortgages." However, on close perusal, it would not appear proper to dispose of the case on the basis of that understanding alone, since other factual allegations clearly before us on the defendants' motion for summary judgment point in another direction. The evidence, though factually disputed, would support, if accepted by the jury, a conclusion that we deal not simply with FAMCO-originated mortgage loans. We may be faced with combined mortgages operating as security for a mutual fund investment.

█ In *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 853, 95 S.Ct. 2051, 2061, 44 L.Ed.2d 621 (1974), the Supreme Court set out the "touchstone" test for whether an investment constitutes a "security":

---

1. As we explained in *Griffin,* in contrast with cases involving wholly criminal "associations in fact," cases involving legitimate business require only

   proof simply of the "legal" existence of the corporation, partnership, or other legal form of the organization charged. Neither the actual nor ostensible purpose of such an enterprise would seem directly relevant to proof of a RICO violation, just so long at it was shown that a defendant was associated with or employed by the legal entity and that the actual "affairs" of the enterprise were being conducted by the requisite pattern of racketeering activity.

   *Id.* at 999. A showing of that nature, however, has not been made here. Instead energy was directed at proving an illegal association-in-fact. It is useless to speculate that the other alternative might have been pursued, perhaps successfully. The fact is that it was not.

2. For an error not raised at the time when the district judge finally rules, at trial or on summary judgment, to be considered on appeal there must have been very limited circumstances amounting to plain error and refusal to consider must result in the denial of fundamental justice. *Hutchinson v. Fidelity Inv. Ass'n,* 106 F.2d 431, 436 (4th Cir.1939). *See Stewart v. Hall,* 770 F.2d 1267, 1271 (4th Cir.1985). In other words, there must have been some basis for charging the district judge with knowledge which the party seeking to raise the point had failed to communicate to the district judge. *United States v. Barge Shamrock,* 635 F.2d 1108, 1111–12 (4th Cir.1980), *cert. denied sub nom. Shell Oil Co. v. United States,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981) (error is "plain" when significant issue "should have been obvious to the parties and to the trial court"). Judge Harvey was vouchsafed no such knowledge.

an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits [we mean to include] participation in earnings resulting from the use of investors' funds....

*Id.* at 853, 95 S.Ct. at 2061. A note secured by a mortgage on a single home is typically not a security because the return on investment therefrom is not derived from the entrepreneurial or managerial efforts of others. *Reves v. Ernst & Young*, 494 U.S. 56, ——, 110 S.Ct. 945, 951, 108 L.Ed.2d 47 (1990).[3] However, participation interests in a managed pool of mortgage notes are securities, *see, e.g.,* 12 U.S.C. § 1719(d) (1990) (authorizing the Government National Mortgage Association to sell mortgage-backed securities). Such interests in amalgamated mortgage notes are securities because any profits realized are derived from the managerial efforts of those who run the pool and make such decisions as determining which mortgages shall be in the pool, how the individual notes will be serviced and managed, and other fund decisions. Thus, a commercial mortgage-maker like FAMCO may sell two different kinds of investment products to the public: 1) individual notes, which are not securities; and 2) interests in a managed pool of notes, which are securities.

■ Thus, reliance upon *First Financial* may be inappropriate here. In *First Financial,* a savings and loan company purchased *specific* FAMCO mortgages on designated properties from a third party, E.F. Hutton, who had previously purchased them from FAMCO. The contract between First Financial and E.F. Hutton provided that:

Purchaser understands that the mortgage loans have been purchased by Seller in the secondary market and that Seller is selling the mortgage loans "as is" and is making no representations and warranties with respect to the mortgage loans but will assign to Purchaser those representations and warranties which it has received from the Originator and all of its rights under the Servicing Agreement.

652 F.Supp. at 473. In addition, First Financial retained "the right to review all mortgage files and to make on site inspections of the properties securing any mortgage loan and reject any mortgage loan that does not meet the terms and conditions of this Agreement...." *Id.* at 473. What First Financial bought, and, in point of fact, received, were specific, individual mortgages, evidenced by the fact that purchasers were expected by the contract to assess the soundness of the individual loans purchased. The circumstances of the instant case may be substantially different.

The evidence permits a finding that the plaintiffs here did not purchase individual loans, but rather, purchased participation interests in a mortgage backed mutual fund pool run by FAMCO, and as such the plaintiffs were relying upon FAMCO's "entrepreneurial and managerial efforts" for their profit. It may be that no one, neither plaintiffs nor defendants, expected the individual investors to manage the loan portfolios. Perhaps all thought the success of the investments depended upon FAMCO's skill in managing mortgage based investments.

For example, Sheikholeslami's misrepresentational solicitation letter—upon which several plaintiffs relied in their decision to invest—has all of the hallmarks of a mortgage-backed mutual fund security, and the solicitation does not mention individual notes at all. First of all, the letter speaks of money "invested with our company," not "through our company." Thus, investors were solicited to invest in FAMCO, not in individual mortgages. Second, the letter claims that the investments were guaranteed. Given the nature of the supposed underlying notes, such a guarantee, to be significant, would have to come from the efforts of FAMCO, and not from the obligation itself. Finally, the letter states that

---

**3.** *Reves* points out that "a note is presumed to be a 'security.'" 110 S.Ct. at 952. It also equates "investment" with "security." The role of the plaintiffs has fundamentally been that of investors. That presumption can be rebutted in case of a note secured by a mortgage on a home, as distinguished from a mortgage pool, where, as here, no notes were issued to the plaintiffs.

"[i]nterest is paid to the depositor at the current bank rate on all deposits, in addition to the percentage points which are paid to you at the time of deposit.... You may receive the interest on your investments monthly or have it compounded on your account." Monthly payments on an individual mortgage note cannot, of course, be "compounded" on an "account" without managerial efforts. The jury might find that this was a solicitation for a FAMCO managed mutual fund—a security—rather than a solicitation for individual notes.

Michael Clott's deposition was not before the district court. It, therefore, plays no part in our decision here. Since we are remanding for further factual development, quite possibly by trial, however, the introduction of the deposition would not be barred.

Thus, viewed at the time the investments were sold, what was involved may well have been a pooled loan portfolio, not individual mortgages. The facts are there to support a finding that FAMCO was seeking money from individual investors for the general use of FAMCO. To be sure, FAMCO's internal paperwork was structured so as to appear to regulators that individual loans were "sold" to plaintiffs, but the misleading paperwork apparently was done only to avoid reporting requirements. It appears that neither the purchasers nor the sellers may have believed that the transactions were for individual notes. Moreover, there is a factual basis for a finding that such "loans" were in fact repeat sold, with the actual notes going to financial institutions (as was the case in *First Financial*) and thus never did belong to plaintiffs. Any notes extant appear actually to have belonged to the institutional investors. The plaintiffs here do not appear ever to have owned any notes.

Thus, from a point of view determined as of the time of sale, the investment instruments in question here may, indeed, have been securities. Although, as a part of the overall scheme, there did exist some mortgage backed notes that were not securities, those notes do not appear to have been what the plaintiffs as investors received.

The part of the scheme that did utilize notes was the fraud, not involving securities, on institutional investors like First Financial. The fraud on the individual plaintiff investors, however, did not appear to have utilized notes. Rather, what was sold to the plaintiffs may well have been a participation interest in a mortgage backed mutual fund type pool investment. At the least, a jury conclusion to that effect would be sustainable.

## III. CONCLUSION

While we affirm the summary judgment for the defendants on the RICO claim, we conclude that summary judgment for the defendants on the securities fraud claim was not warranted.

Accordingly the judgment is AFFIRMED IN PART AND REVERSED IN PART.

K.K. HALL, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's affirmance of the dismissal of appellants' RICO claims. However, I agree with the district court that appellants did not state cognizable claims for securities fraud; I therefore dissent from the majority's reversal of the dismissal of those claims.

A note secured by a residential mortgage is not a "security." *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 951, 108 L.Ed.2d 47 (1990). It is not magically transformed into a security when it is fraudulently sold. Which comes first, the security or the fraud? The majority seems to hold that it does not matter, but it must. *Tafflin v. Levitt*, 865 F.2d 595, 599 (4th Cir.1989) (the character of an instrument is determined when it is issued). Though it seems self-evident, the securities laws protect persons who intend to purchase securities. If a seller promises to deliver a security to a buyer, but delivers a widget, he has committed securities fraud. If, on the other hand, the seller promises a widget but delivers a security, he has committed widget fraud. I just cannot see how a person who has no intention of buying a security, and is not promised a security, can be the victim of securities fraud.

I would hold the plaintiffs to the fatal admissions in their complaint. No less than three times, in paragraphs 17, 27, and 28, the plaintiffs assert that they thought they were buying mortgage notes. The majority holds that, notwithstanding these assertions, evidence in the record shows that the plaintiffs might be able to prove otherwise; consequently, there is a sufficient issue of material fact to preclude summary judgment. This holding ignores *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir.1984), in which this court held that a party cannot create a genuine issue of material fact by contradicting itself. Moreover, the complaint's allegations are not inadvertent errors; FAMCO's representation that investors were purchasing mortgage notes is the cornerstone of the fraud.

Except as noted above, I respectfully dissent.