United States Court of Appeals,

Fifth Circuit.

No. 91–1790.

TEL–PHONIC SERVICES, INC., William Kirk, and John Bowen, Plaintiffs–Appellants,

v.

TBS INTERNATIONAL, INC. a/k/a Dy–Con, International, Inc. and the Dispatch Printing Company, Defendants–Appellees.

Oct. 23, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, WILLIAMS and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

We are asked to review the sufficiency of a multiple-claim complaint. Plaintiff John Bowen contracted with Defendant TBS International, Inc., to purchase computer equipment and to market TBS's telephone-calling software and recordings. A superseding contract between TBS and Plaintiff Tel–Phonic Services, Inc., a corporation jointly owned by Bowen and Plaintiff William Kirk, extended Plaintiffs' marketing area and redefined the parties' rights.

According to the complaint and amended complaint, a series of service problems followed the initial contract, such as failure of call program services, failure of delivery of a magnetic tape drive, and refusal to provide requested technical representatives. Although some initial problems were compromised, Tel–Phonic charges that TBS and/or its parent corporation, The Dispatch Printing Company, continually made misrepresentations to Plaintiffs, billed Tel–Phonic for charges not due, coerced Tel–Phonic to waive commissions and other contractual rights to revenue, and tried to destroy Tel–Phonic's business by such coercive tactics. Plaintiffs also charge that Defendants failed to safe-guard Tel–Phonic's customer relations and diverted a major customer order. Plaintiffs sued TBS and The Dispatch Printing Company, in federal district court in Tennessee, asserting RICO[1]

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (West 1984 and Supp.1992).

violations, an antitrust claim, breach of contracts, fraud, and breach of fiduciary duty.

On Defendants' motion to dismiss, the Tennessee district judge ruled that the complaint failed to state a RICO claim and transferred the remaining claims to the Northern District of Texas. Upon renewal of Defendants' motion, the Texas district court dismissed the remaining claims. Plaintiffs challenge the transfer of venue and the dismissal of each of their claims. For the following reasons, we dismiss the challenge to the transfer of venue; affirm the judgment dismissing the RICO, antitrust, and fiduciary claims; and reverse and remand the fraud and breach-of-contract claims.

## I. THE TRANSFER OF VENUE

Asserting that venue was proper in Tennessee, Plaintiffs allege error in the transfer to the Northern District of Texas. Defendants contend that this Court cannot review the transfer order, because it was entered by a district court within the Sixth Circuit.[2] We need not decide this issue. Having agreed to transfer venue to the Northern District of Texas, Plaintiffs cannot now complain of what the district court has done in accordance with their agreement. *See Pacific R.R. Mo. v. Ketchum,* 101 U.S. 289, 297, 25 L.Ed. 932, 936 (1880). Although Plaintiffs initially objected to Defendants' motion to dismiss based on improper venue, Plaintiffs later advised the court that they had no objection to transferring the matter to federal court in Dallas. In fact Plaintiffs invited the court to transfer the case to Dallas if it was not inclined to rule against Defendants on the motion to dismiss. A party will not be heard to appeal the propriety of an order to which it agreed. *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1066 (5th Cir.1986); *Haitian Refugee Center v. Civiletti,* 614 F.2d 92, 93 (5th Cir.1980).

Accordingly, we dismiss that portion of Plaintiffs' appeal challenging the transfer from the Eastern District of Tennessee to the Northern District of Texas.

---

[2]The Judicial Code provides for appeals "[f]rom a district court ... to the court of appeals for the circuit embracing the district." 28 U.S.C.A. § 1294(1) (West 1966).

II. THE MOTIONS TO DISMISS

The Tennessee district court dismissed Plaintiffs' RICO claims for failure to state a claim under Federal Rule of Civil Procedure 12, and the Texas district court likewise dismissed the remaining federal claims (anti-trust claims) and all state claims. A motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir.1966). Dismissal cannot be upheld unless it appears beyond doubt that the plaintiffs would not be entitled to recover under any set of facts that they could prove in support of the claims. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Worsham v. City of Pasadena,* 881 F.2d 1336, 1339 (5th Cir.1989); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1185–86 (5th Cir.1986). This Court independently applies the same test employed by the trial court. *Worsham,* 881 F.2d at 1339.

A. The RICO Claims

1. Appellate Jurisdiction

Because the Tennessee court dismissed the RICO claims before it transferred the matter to a district court within our Circuit, Defendants question whether this Court has jurisdiction to review that dismissal. We hold that we do.

The order dismissing the RICO claims was not final when the transfer occurred and was subject to revision at any time before entry of final judgment. Fed.R.Civ.P. 54(b). The district court in Texas had jurisdiction to review the dismissal by the district court in Tennessee. "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (recognizing that the law-of-the-case doctrine expresses the practice of courts to refuse to reopen what has been decided but does not limit their power). The fact that the Texas court did not review the Tennessee court's dismissal of the RICO claims does not insulate the issue from

appellate review.  *See id.*  The RICO dismissal become appealable only when the entire case was final. We are reviewing the final judgment of the district court in Texas, as based in part on the opinion of the federal district judge in Tennessee.  *See also Astarte Shipping Co. v. Allied Steel & Export Serv.,* 767 F.2d 86, 87 (5th Cir.1985) (court of appeals of the circuit of the transferee district court has jurisdiction to review decisions made before a 28 U.S.C. § 1407 transfer).

## 2. Applicable Law

When a case is transferred from a district in another circuit, the precedent of the circuit court encompassing the transferee district court applies to the case on matters of federal law.  *See* 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404[4.—2] (1992) ("[T]heoretically the [federal] law is the same [in both circuits], though the courts of appeals may entertain different ideas about what it is.").  Accordingly, we assess the federal claims under this Circuit's precedent.

## 3. Reason for Dismissal of the RICO Claims

Plaintiffs asserted that by a pattern of fraudulent acts Defendants have violated the Racketeer Influenced and Corrupt Organizations (RICO) Act and have engaged in a RICO conspiracy.

The RICO predicate acts were mail and wire fraud.  Compl. 51–53.  The district court dismissed the RICO claims, finding that Plaintiffs failed "to allege a continuous pattern of intentional acts designed to defraud the plaintiffs" and failed "to plead with particularity the requisite elements of wire and mail fraud pursuant to Rule 9(b)."  Mem. Op. Sept. 12, 1988 at 3, 4;  *see* Fed.R.Civ.P. 9(b).  Because the complaint insufficiently pleads a continuous pattern of racketeering activity or an agreement to commit at least two predicate acts of racketeering activity, we affirm the dismissal of the RICO claims.

### a. Averments of Fraud

We find that most of the alleged wrongs are not pleaded with sufficient particularity to

constitute the RICO predicate act of wire fraud or mail fraud. Rule 9(b) requires particularity in pleading the "circumstances constituting fraud." This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well. *See Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir.1989); *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO,* 901 F.2d 404, 430 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

At a minimum, Rule 9(b) requires allegations of the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990); *Keith v. Stoelting, Inc.,* 915 F.2d 996, 1000 (5th Cir.1990). Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally. Fed.R.Civ.P. 9(b).

The complaint gives some specifics about communications through the mails or on the telephone, but generally fails to specify the content of any misrepresentation.[3] Misrepresentations that occurred at a meeting do not constitute wire or mail fraud, 18 U.S.C.A. §§ 1341, 1343 (West 1984 & Supp.1992), and thus could not constitute racketeering activity. *Id.* § 1961(1) (West Supp.1992); *see also Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445 (1st Cir.1990) (common-law fraud not implicating the mails or wires does not constitute "racketeering activity" under § 1961(1)); *Jennings v. Emry,* 910 F.2d 1434, 1438 (7th Cir.1990) (violations of civil rights or anti-trust laws that are not predicate acts under § 1961 are irrelevant to RICO claim); *Zolfaghari v. Sheikholeslami,* 943 F.2d 451, 453 (4th Cir.1991) (common-law fraud does not suffice to state a RICO violation); *Marriott*

---

[3]For example, the amended complaint alleges that TBS or its representatives used the phone or mails to invite AT & T people to Dallas (breaching TBS's agreement to safe-guard Plaintiffs' customer relationship with AT & T), to refuse to send personnel representatives (breaching an agreement to provide technical assistance), to coerce a 3% commission, to bill Plaintiffs (or "coerce payments") under a maintenance agreement that Plaintiffs allege did not exist, and to "coerce Plaintiff out of its contractual benefits if Plaintiff would agree to eliminate "certain ambiguities.' " TBS also failed to answer correspondence in contravention of its agreement to assist Plaintiffs. These contractual grievances do not identify any misrepresentation of fact or a false promise made by Defendants.

*Bros. v. Gage,* 911 F.2d 1105, 1109 (5th Cir.1990) (breach of state law aiding the allegation of "enterprise" is not transformed into a predicate act).

Plaintiffs have stated one claim of mail fraud, in their allegation that TBS wrote an April 27, 1983, letter "with false representations inducing plaintiffs to change the agreement to allow TBS to sell two new systems to the Bell subsidiary falsely representing that TBS would buy back two systems from plaintiff." Am.Compl. ¶ 28. TBS had allegedly previously agreed that Plaintiffs could sell their two TBS systems to the Bell subsidiary, and, through this false representation, TBS secured the profitable sale for itself. *See* Am.Compl. ¶ 27, Compl. ¶¶ 40–41. We find this allegation of fraud sufficient to withstand Rule 9(b). The filing of the complaint within four years of this alleged mail fraud preserves the right to RICO damages caused by that act, if Plaintiffs can prove a pattern of racketeering activity. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 155–56, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987) (applying four-year limitation period of analogous Clayton Act claims to civil RICO actions in the interest of uniformity);[4] *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971) (holding that in "continuing conspiracy" to violate anti-trust laws, statute of limitations for damages for a particular act causing injuries runs from the commission of the act); *Al George, Inc. v. Envirotech Corp.,* 939 F.2d 1271, 1273 & n. 3 (5th Cir.1991) (recognizing *Zenith*'s rule of separate accrual for overt acts in an anti-trust "continuing conspiracy," and noting that under *Agency Holding* RICO claims are subject to the same limitation period as anti-trust claims).

### b. RICO Pattern

To prove a "pattern of racketeering activity," a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity. 18

---

[4]Because *Agency Holding* applied its rule to the parties in that case, we apply its holding retroactively to the parties in this litigation. *See James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ——, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (1991); *Sterling v. Block,* 953 F.2d 198, 200 (5th Cir.1992); *see also Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 108 (5th Cir.1987) (applying *Agency Holding* retroactively).

U.S.C.A. § 1961(5); *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Upon review of the complaints, we find that Plaintiffs may be able to prove a second predicate act consistent with the allegations that Robert Adler misrepresented to Plaintiffs' representative (via telephone conversation on September 4, 1982) that certain call programs were "delayed" (when the call programs were actually going to a competitor of Plaintiffs, a sister corporation of Defendant TBS). *See* Am.Compl. ¶¶ 9–10. Establishing the minimum number of predicates, however, is not sufficient to establish a pattern; the racketeering predicates must be *related* and amount to or pose a threat of *continued* criminal activity. *H.J., Inc.,* 492 U.S. at 236–239, 109 S.Ct. at 2899–2900.

Even assuming that these two predicate acts establish the pattern "relationship" element, the alleged predicate acts lack the "continuity" element required to establish a RICO pattern. "Continuity" is a temporal concept. *Id.* 492 U.S. at 242–243, 109 S.Ct. at 2902. RICO reaches activities that "amount to or threaten long-term criminal activity." *Id.* 492 U.S. at 243 n. 4, 109 S.Ct. at 2902 n. 4. The complaints cover a time frame from early 1981 through mid–1984 or beyond. (The Amended Complaint was filed in September 1988). Yet these two alleged instances of fraud occurred only seven months apart.

"Continuity" refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* 492 U.S. at 241, 109 S.Ct. at 2902.

> Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct....
>
> ... A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.

*Id.* In this case, there is no such continuity alleged. There has been no "specific threat of repetition," nor any suggestion that the predicate acts or offenses are part of Defendants' "regular way of doing business." *Id.* There has been no suggestion that Defendants "operat[e] as part of a long-term

association that exists for criminal purposes." *Id.* Finally, there is no suggestion that "the predicates are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO "enterprise.' " *Id.* "Short-term criminal conduct is not the concern of RICO." *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453, 1464 (5th Cir.1991).

The allegations of the complaint suggest no "series" of racketeering acts with the level of continuity that is required for a RICO violation. *See id.* Since there is no "pattern of racketeering activity" discernable from the complaint, we affirm the dismissal of the RICO claim.

## c. RICO Conspiracy

Plaintiffs also allege the existence of a conspiracy "to defraud plaintiffs." Am.Compl. ¶ 44. While Plaintiffs have pleaded the conclusory allegation that the Defendants "conspired," they have not pleaded the elements of a RICO conspiracy. The complaint does not allege facts implying any agreement involving each of the Defendants to commit at least two predicate acts.

We agree with the Second Circuit that "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990); *see also Glessner v. Kenny,* 952 F.2d 702, 714 (3d Cir.1991) (civil RICO conspiracy claim must plead agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 47 (1st Cir.1991) (civil RICO conspiracy claim must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes). Accordingly, because the complaints fail to plead specifically any agreement to commit predicate acts of racketeering, the RICO conspiracy claim was also properly dismissed.

B. The State Claims

## 1. Law Applicable

The transfer of this case from a Tennessee to Texas venue raises the question of the law applicable to the state claims. The answer turns on whether the transfer of venue was under § 1406(a), concerning transfer of a case filed in a court in which venue was not properly laid,[5] or under § 1404(a), concerning transfer of a case filed in a proper venue.[6]

"[F]ollowing a section 1406(a) transfer, regardless of which party requested the transfer or the purpose behind the transfer, the transferee court must apply the choice of law rules of the state in which it sits." *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1110 (5th Cir. Unit A June 1981); *see also* 15 Charles A. Wright et al. *Federal Practice and Procedure* § 3827, at 267 (1986) ("[W]henever the original venue is improper ... the transferee court should apply whatever law it would have applied had the action been properly commenced there."). On the other hand, a section 1404(a) transfer does not change the law applicable, regardless of who initiates the transfer. *Ferens v. John Deere Co.,* 494 U.S. 516, 523–525, 110 S.Ct. 1274, 1280, 108 L.Ed.2d 443 (1990). *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), holding that a transferee district court is obligated to apply the state law that would have applied had there been no change in venue, addresses only matters transferred under § 1404(a). *See Van Dusen,* 376 U.S. at 639, 84 S.Ct. at 821 (holding that a § 1404(a) change of venue is "but a change of courtrooms").

---

[5]The Judicial Code provides,

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C.A. § 1406(a) (West 1976).

[6]The Code also provides,

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C.A. § 1404(a) (West 1976).

This case was transferred because venue was improper, i.e., as a transfer under § 1406(a). *See* Mem. Order of Sept. 12, 1988 (noting that venue in the Middle District of Tennessee was "improper"); *see also* Defs.' Mot. to Dismiss Pls.' Compl. (for "improper" venue under Federal Rule 12(b)(3)). The transferring court held,

> Because the Court finds that plaintiffs' RICO claims should be dismissed, the Court is of the opinion that venue is improper in the Middle District of Tennessee for the remaining claims. Had plaintiffs' RICO claims survived, venue would have been proper in this Court under 18 U.S.C. § 1965 [providing for special RICO venue]. In light of the Court's determination, however, plaintiffs are bound to pursue their remaining claims in the Northern District of Texas in accordance with the contractual agreement giving rise to this lawsuit.

Mem. Order at 4–5.

We conclude that the venue transfer in this case was under section 1406(a).[7] We accordingly apply Texas choice-of-law rules. *See Ellis,* 646 F.2d at 1110.

### 2. Choice-of-Law Rules of Texas

For the claims of breach, our task is simple, for Texas recognizes the right of contracting parties to agree to choice of law. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). The parties stated in both agreements their intention that Texas law apply. Accordingly, Texas law applies to all the claims relating to the contracts in accordance with the parties' agreement.

As to the fraud claim, we believe that the Texas Supreme Court would follow the conflicts

---

[7]We are cognizant of *In re Fireman's Fund Ins. Cos.,* 588 F.2d 93, 94–95 (5th Cir.1979), in which this Court noted that a district court's transfer according to a forum-selection clause was a transfer under § 1404(a)) rather than § 1406(a). Although the transferee court in this case was similarly chosen because of a forum-selection clause, want of a special venue provision distinguishes the transfer order in this case from that approved in *Fireman's Fund.* In *Fireman's Fund* venue was proper in the transferring forum under the Miller Act's special venue provision. In this case the court noted that venue was "only proper based on the broadly worded venue provision of the RICO statute." Mem. Order at 2. After the dismissal of the RICO claim, the court dismissed because the RICO special venue provision was inapplicable, and venue was then "improper" in the transferring court. Accordingly, nothing in *Fireman's Fund* would characterize the transfer in this case as under § 1404(a) rather than § 1406(a).

principle that the effect of a misrepresentation or undue influence upon a contract is determined by the same law that governs the contract. *Restatement (Second) of Conflicts of Law* § 201 (1971); *see Duncan,* 665 S.W.2d at 421 (adopting the choice-of-law test for contracts explained in *Restatement (Second) of Conflicts* ); *see also Gutierrez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979) (adopting the *Restatement* 's choice-of-law principles for torts). The claimed fraud is fraud in the inducement. "[Q]uestions involving the effect of misrepresentation, duress, undue influence and mistake upon a contract are determined by the law chosen by the parties, if they have made an effective choice." *Restatement* § 201 cmt. a.

Similarly, the only possible claim for breach of fiduciary duty must be based on contract as well. Fiduciary relationships usually arise in cases of attorney and client, partners, parent and child, and joint adventurers. *Consolidated Gas & Equip. Co. v. Thompson,* 405 S.W.2d 333, 336–37 (Tex.1966); *Linder v. Citizens State Bank,* 528 S.W.2d 90, 94 (Tex.Civ.App.1975, writ ref'd n.r.e.). Because the complaint suggests no such relationship unless one of the contracts creates a partnership or joint adventure, we conclude that the fiduciary claim is also founded in contract. Accordingly, under the choice-of-law clause in the contracts, we will apply Texas law to all the state claims.

### 3. Applying Texas Law

#### a. Fraud in the Inducement

Applying a two-year limitation period for fraud, the Texas district court dismissed the state law fraud claim as time-barred. The appropriate limitations period for fraud in the inducement, however, is four years.[8] *See generally Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990). As noted above, most of the averments of wrongdoing within four years of the complaint were not

---

[8]Plaintiffs argue, for the first time on appeal, that the district judge failed to consider the effect of Tel–Phonic's having filed bankruptcy on the various limitation periods. Ordinarily, an issue not presented to or passed on by the district court will not be considered by this Court on appeal. *Clark v. Aetna Casualty & Sur. Co.,* 778 F.2d 242, 249 (5th Cir.1985); *see also Nathan Rodgers Constr. & Realty Corp. v. City of Saraland, Ala.,* 676 F.2d 162, 163 (5th Cir.1982) (no plain error in district court's failure to consider plaintiff's tolling argument not clearly addressed to district court).

pleaded sufficiently under Rule 9(b) to establish a claim for fraud. As discussed above, Plaintiffs have nevertheless sufficiently alleged an April 1983 TBS letter with false representations inducing plaintiffs to change an agreement. Am.Compl. ¶ 28, Compl. ¶ 41. We reverse the dismissal of the state law claim for fraud, because we find the allegations regarding an April 1983 offense of fraud sufficient and timely.

### b. Claims of Breach of Contract

The district court did not articulate a reason for dismissing the claims for breach of contract (and the Federal Rules do not require reasons for a Rule 12 dismissal, Fed.R.Civ.P. 52(a)). Defendants suggest that the dismissal was apparently based on limitations. If so, it was erroneous.

A four-year statute of limitations governs breach of contract actions under Texas law. Tex.Civ.Prac. & Rem.Code Ann. § 16.051 (West 1986); *see also Sullivan v. Hoover,* 782 S.W.2d 305, 306 (Tex.App.—San Antonio 1989, no writ). The complaint was filed in February 1987. While it is true that the Bowen–TBS contract and the Tel–Phonic–TBS contract were executed more than four years earlier, a breach of contract acti on accrues upon the date of breach, not the date of contract. *Ben C. Jones & Co. v. Gammel–Statesman Publishing Co.,* 100 Tex. 320, 99 S.W. 701 (1907).

The complaints aver that in April 1983 TBS agreed to buy back $300,000 of equipment from Plaintiffs and that it later breached this agreement. Compl. ¶¶ 40–42, Am.Compl. ¶¶ 27–29. Because the alleged contract was within four years of the complaint, the alleged breach was necessarily within the four-year limitation period. Additionally, the complaints assert that Plaintiff (apparently Tel–Phonic) discovered in late 1983 that TBS International breached contracts. *See, e.g.,* Am.Compl. ¶¶ 33–37 (breach of agreement to safeguard Tel–Phonic's customer relationships and breach of agreement to provide support services). At least some of the asserted claims for breach of contract are timely.

Defendants alternatively assert that the complaints are unclear as to what contract is alleged to have been breached. Although the complaints are not easy reading, they aver the existence of various agreements and sufficiently describe conduct in violation of specific provisions of those agreements such that a claim for breach might be proven. Accordingly, we reverse the dismissal of the breach of contract claims.

### c. Breach of fiduciary duty

Plaintiffs next assign error to the court's dismissing their claim that Defendants assumed and breached a fiduciary position. Plaintiffs argue that the complaints suggest a pattern of "assurances and reassurances" about TBS's performance under the contract—assurances that Defendants were acting in the best interest of both parties.

Yet the allegations as amended do not conform to Plaintiffs' argument. There is no allegation that the Defendants ever assured Plaintiffs that Defendants were acting in the Plaintiffs' best interest; in fact the allegations suggest that Plaintiffs were aware early that their interests were in jeopardy. Moreover, mere subjective trust alone does not create a fiduciary relationship. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962). Plaintiffs' argument that they relied on Defendants' assurances therefore does not further their claim. "A fiduciary duty is an extraordinary one and will not lightly be created." *Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 567 (Tex.App.—Dallas 1989, no writ).

The district court found that the contracts imply an arm's length transaction between the parties and found no joint venture, no partnership, and consequently no fiduciary duty between the Plaintiffs and the Defendants. Upon review of the contracts appended to the amended complaint, we agree.

## C. The Antitrust Claim

The complaint alleges violations of the Robinson–Patman Anti–Discrimination Act, which prohibits sellers from discriminating among purchasers of commodities by price differences or, among purchasers for resale, by disparate provision of services. *See* 15 U.S.C.A. §§ 13(a), (e) (West 1973). The district court dismissed the anti-trust claim, ruling that "neither [of the complaints] state[s] that any other buyer received preferential treatment in services or facilities compared with Plaintiff Tel–Phonic." Additionally, it concluded, "neither pleading states that services of like grade and quality to those the Plaintiffs claim they deserved under their agreement with the Defendants were being provided to other buyers for the same consideration as paid by the Plaintiffs." Taking as true the well-pleaded facts of the complaints,[9] we agree with the district court and affirm the dismissal of the anti-trust claims.

The amended complaint alleges that "plaintiff and TBS of Ohio [a competitor] purchased like commodities, grade and quality from TBS in contemporaneous sales." Compl. ¶ 37. Even if these purchases were within the limitations period,[10] we note that the allegations do not state an anti-trust violation. The Act prohibits price discrimination by a seller of commodities among different purchasers of commodities of like grade and quality. 15 U.S.C. § 13(a) (West 1973). "Price discrimination" is price differentiation, or "selling the same kind of goods cheaper to one purchaser than to another." *Federal Trade Comm'n v. Anheuser–Busch, Inc.,* 363 U.S. 536, 549, 80 S.Ct. 1267, 1274, 4 L.Ed.2d 1385 (1960).

The pleading does not suggest any such price differentiation. *Cf. Hartley & Parker, Inc. v.*

---

[9]*Stanton v. United States,* 434 F.2d 1273, 1276 (5th Cir.1970). The complaint asserts in a conclusory fashion that Defendants knew of "the unlawful discrimination of service and price." Compl. ¶ 39. In considering the sufficiency of the complaint, we do not accept as true such unsupported conclusions of law. *See id.*

[10]A cause of action by a person injured by violation of anti-trust laws "must be commenced within four years after the cause of action accrued." 15 U.S.C.A. § 15b (West Supp.1992). Although the complaint gives no specific date for these alleged purchases, the entire complaint describes actions in or around 1981. Generally, the time of the initial act that injures a plaintiff's business is the time of accrual. *Al George,* 939 F.2d at 1273. Accordingly, we think these alleged wrongs were not timely asserted.

*Florida Beverage Corp.,* 307 F.2d 916, 919 (5th Cir.1962) (complaint charging sales to competitor "at prices substantially lower" than prices offered plaintiffs charges § 13(a) violation).

The complaints also suggest only that TBS denied Plaintiffs technical support in 1981 and 1982 that was owed under a contract, while it continued to supply competitors of Tel–Phonic with sales and technical support in 1981. Compl. ¶ 36–37; Am.Compl. ¶ 13, 19. These allegations fail to state an anti-trust claim (even if they are timely)[11] because they fail to suggest that TBS provided services "upon terms not accorded to all purchasers on proportionally equal terms."[12] *Cf. Hartley,* 307 F.2d at 922 (complaint describing furnishing of services to competitor "without offering the same services ... to Plaintiff *on proportionally equal terms* " charges § 13(e) violation) (emphasis added). Accordingly, the anti-trust claims were appropriately dismissed.

## III. DISCOVERY

Plaintiffs finally assert that the various courts erred by denying them discovery. In their opposition to the motion to dismiss, Plaintiffs requested that the court allow them either to conduct discovery before amending the complaint or to file a more definite statement by amending their complaint. Upon Plaintiffs' presentation of an amended pleading, the court allowed an amendment, referring the amended pleading to the magistrate judge for a recommendation as to its sufficiency. *See* Order of Sept. 12, 1988. We will not infer from this action that the court "refused" Plaintiffs discovery. The court issued no protective order limiting discovery while the motion to dismiss was pending. The docket sheet reveals four years of litigation and no motions on the subject of discovery. Under the Federal Rules Plaintiffs could have conducted discovery and did not. *See* Fed.R.Civ.P. 26–37; *cf. Elliott,* 867 F.2d at 882 (five months between complaint and dismissal was adequate time

---

[11]Like the alleged purchases of like commodities in the complaint, these alleged wrongs seem to have been asserted beyond the four-year statute of limitations.

[12]The Robinson–Patman Act prohibits discrimination among purchasers of commodities bought for resale "by contracting to furnish or furnishing ... any services or facilities connected with the ... sale or offering for sale of such commodities so purchased upon terms not accorded to all purchasers on proportionally equal terms." 15 U.S.C.A. § 13(e) (West 1973).

for plaintiff to have conducted discovery). Because Plaintiffs sought no ruling on the subject of discovery, there is no error for our review.

IV. CONCLUSION

Because Plaintiffs consented to transfer venue to Texas, we do not consider their appeal challenging the decision transferring venue. Reviewing the RICO claims, we hold that the complaints do not suggest a continuous pattern of racketeering activity or an agreement to commit at least two predicate acts of racketeering activity. The complaints do not state an anti-trust claim, because they suggest no unlawful discrimination in price or terms. The complaints state a claim for fraud in the inducement with sufficient particularity to survive a motion to dismiss and also state a timely claim for breach. Because no fiduciary relationship is suggested by the complaints or the contracts, we affirm the dismissal of the claim for breach of fiduciary duty. Finally, we discern no discovery error by the district court.

Accordingly, we dismiss the appeal of the transfer order and affirm the judgment of the district court dismissing the RICO, anti-trust, and fiduciary claims. We reverse and remand for consideration of the claims of fraud in the inducement and breach of contract in the particulars noted above.

APPEAL DISMISSED IN PART; JUDGMENT AFFIRMED IN PART, REVERSED AND REMANDED IN PART.