# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 30, 2012

Lyle W. Cayce
Clerk

No. 11-10936

PIPEFITTERS LOCAL NO. 636 DEFINED BENEFIT PLAN, Individually and On Behalf of All Others Similarly Situated

Plaintiff-Appellant

v.

ZALE CORPORATION, MARY E. BURTON, CYNTHIA T. GORDON, RODNEY CARTER

Defendants-Appellees

Appeal from the United States District Court for the
Northern District of Texas

Before STEWART, Chief Judge, and DeMOSS and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Pipefitters Local No. 636 Defined Benefit Plan ("Pipefitters") appeals the dismissal of its putative class action alleging securities fraud claims against Defendants-Appellees Zale Corporation ("Zale"), Mary E. Burton ("Burton"), Cynthia T. Gordon ("Gordon"), and Rodney Carter ("Carter") (collectively "Defendants"). For the following reasons, we AFFIRM the district court's dismissal.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10936

## BACKGROUND

In November 2009, investors who had purchased Zale securities between November 16, 2006, and October 29, 2009, ("the Class Period") sued Zale and several of its chief officers, Burton, Carter, and Gordon, ("the Individual Defendants")[1], for securities fraud. The district court appointed Pipefitters to be the lead plaintiff for the putative class. On August 9, 2010, Pipefitters filed its Consolidated Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)) and Securities and Exchange Commission ("SEC") Rule 10b-5 (17 C.F.R. § 240.10b-5). The Consolidated Complaint alleged that during the Class Period, Defendants knew the statements made in Zale's SEC filings, press releases, and investor calls were materially false, or acted in severely reckless disregard of their falsity. The Consolidated Complaint relied on Zale's restatement and subsequent disclosure of inadequate internal controls as a basis of its allegations.[2] Among other things, the Consolidated Complaint alleged that the Individual Defendants wanted to inflate Zale's earnings due to a change in the jewelry warranty program; that they were on notice from a prior unrelated SEC investigation; that they signed Sarbanes-Oxley Act ("SOX") certifications; that they received executive bonuses

---

[1] Neal L. Goldberg, Zale's CEO from December 2007 until the end of the Class Period, was also named as a defendant. Mr. Goldberg died in March 2011 and was not named in the most recent complaint.

[2] According to Pipefitters' complaint, Zale filed a Form 8-K on September 18, 2009, announcing that it planned to restate financial results for the years 2007 and 2008 and interim periods in fiscal 2009. On the last day of the Class Period, Zale issued a press release and filed a Form 10-K disclosing its fiscal year 2009 results and reflecting restatements of prior periods. Significant portions of the restatement related to prepaid advertising costs that should have been recorded as expenses. Matthew Appel, Zale CFO at the end of the Class Period, discussed financial results with investors on October 30, 2009. He explained that the company had determined that "certain advertising costs previously recorded as prepaid were expensed in periods subsequent to the period in which the advertisement actually ran." R. 980. Pipefitters alleges that the erroneous advertising accounting resulted in an overstatement of net income by approximately $19.6 million during the Class Period.

and compensation based on Zale's earnings; and that they claimed to have carefully examined advertising expenses.

Defendants moved to dismiss. After oral arguments on April 7, 2011, the district court granted Defendants' motion to dismiss the Consolidated Complaint without prejudice. The district court concluded that Pipefitters' theory under the Consolidated Complaint was "plausible" but failed to satisfy the heightened pleading standard for fraud claims. More specifically, the district court found that the Consolidated Complaint failed to offer particularized facts showing that any of the Individual Defendants were actually aware of relevant accounting errors at the time of the misstatements, and failed to specifically allege how the Individual Defendants were severely reckless in not knowing about accounting errors at the time. Pipefitters argued that Zale's restatements in themselves supported a strong inference of scienter. But the district court found that there was little indication that the Individual Defendants were aware that the financial statements were false, and that even if the Individual Defendants were closely monitoring company expenses, there was no showing that they would have realized how advertising expenses were being accounted for. The district court concluded that the more reasonable inference was that there was negligence, and that public statements made by the Individual Defendants were mere puffery.

The court allowed Pipefitters to file an Amended Complaint, which was filed on May 23, 2011. Pipefitters continued to allege that Defendants publicly asserted that they were focused on "expense reduction" and committed to "financial[] rigor and discipline." R. 993. The Amended Complaint also largely incorporated alleged facts from an SEC investigation and complaint against Rebecca Higgins ("Higgins"), Zale's Vice President of marketing at the time. The SEC complaint essentially alleged that Higgins "caused Zale to record certain television advertising costs as prepaid advertising when, in fact, those costs

should have been expensed in the periods they were incurred"; that "Zale's accounting staff relied on Higgins to determine how much television media to expense, as well as the proper periods in which to expense them"; that Higgins "periodically directed her staff to enter negative amounts into the Job Tracking database, improperly re-classifying 100% of selected invoices to the subsequent fiscal year"; and that Higgins "delayed processing invoices related to prior year advertising until after year-end, and then described these invoices as relating to the subsequent year." R. 1012-15. Pipefitters relied upon the alleged scienter of Higgins, which it maintained should be imputed to Zale and the Individual Defendants. To show Higgins' scienter, Pipefitters primarily relied on the SEC complaint's statement that "Higgins knew or should have known that Zale's prepaid advertising balance was overstated and that Zale recorded certain advertising expenses in the incorrect periods." R. 992.

The district court allowed each party to brief the sufficiency of Pipefitter's Amended Complaint in a synopsis. On August 1, 2011, the district court dismissed the Amended Complaint with prejudice. The district court found that the alleged facts did not create a strong inference that Higgins had intended to defraud investors. Rather, the district court found that "[t]he more compelling inference is that Higgins was acting under the motivation to make the Marketing Department appear to be efficient, organized, and well-managed, and not that she intended to initiate company-wide fraud." R. 1212-13. The district court also found that the alleged facts could not establish scienter on Higgins' part based on severe recklessness, explaining that "there are few facts alleged which suggest Higgins was even aware her actions could potentially lead to fraudulent financial statements on behalf of the entire company." R. 1213. The district court concluded that "[t]here are simply not enough facts to say that Higgins was obviously aware her inaccurate accounting could or would eventually result in Zale releasing misleading financial statements with

No. 11-10936

material errors." *Id.* Finally, the district court stated that "[t]he fact that the SEC chose to only charge Higgins with violations of Section 13 of the Exchange Act instead of fraud under Section 10 is consistent with this inference." R. 1214.

Pipefitters next filed a Rule 59(e) motion with an attached Proposed Second Amended Complaint ("Proposed SAC"). The Proposed SAC largely reincorporated the same allegations from the earlier complaints. Additionally, the Proposed SAC alleged that the Individual Defendants were severely reckless for relying on Higgins, a non-accountant, for financial information related to advertising costs. The Proposed SAC also re-alleged the signed SOX certifications; the Individual Defendants' statements regarding how closely they were monitoring the company's marketing efforts and expenses during the Class Period; and the sale of securities during the Class Period. The district court found no new allegations or arguments in the Rule 59(e) motion or Proposed SAC that would change its previous determination, and accordingly denied the motion.

## STANDARD OF REVIEW

We review a district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim *de novo*. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). We accept the facts alleged as true and view the allegations in the light most favorable to the plaintiff. *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Review of a district court's denial of a Rule 59(e) motion for reconsideration is ordinarily for abuse of discretion. However, if the district court considers a proposed amended complaint attached to the motion and still grants dismissal for failure to state a claim, we review *de novo* whether the proposed amended complaint sufficiently states a claim. *See Templet v. HydroChem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).

No. 11-10936

In denying Pipefitters' motion for reconsideration, the district court "considered the Motion and the Proposed Second Amended Consolidated Class Action Complaint" and "f[ound] no new allegations or arguments . . . that change the Court's previous determinations that Plaintiffs' allegations do not sufficiently allege a strong inference of scienter." R. 1354. Because the district court considered Pipefitters' Proposed SAC, we review *de novo* whether this complaint sufficiently states a claim.

## DISCUSSION

### I.     Pleading Standard

Because Pipefitters alleges securities fraud claims against Defendants, it must satisfy the heightened pleading standard for fraud. Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff is required to "plead with particularity the circumstances constituting the alleged fraud." *Southland,* 365 F.3d at 362. Rule 9(b) "requires the plaintiff to allege 'the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992) (quotation omitted)). In other words, Rule 9(b) requires "'the who, what, when, where, and how' to be laid out" in the complaint. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

Securities fraud claims brought by private litigants are also subject to the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). A complaint alleging a false statement of a material fact or a misleading omission of a material fact "shall specify each statement alleged to have been misleading, the reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and

belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). All claims in this case require a showing of scienter, meaning "'not merely simple or even inexcusable negligence,'" but rather "'intent to deceive, manipulate, or defraud,' or that 'severe recklessness' in which the 'danger of misleading buyers or sellers . . . is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Southland*, 365 F.3d at 366 (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. 1981) (en banc)). In determining whether a corporate defendant acted with scienter, "it [is] appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to collective knowledge of all the corporation's officers and employees." *Id.* at 366.

## II.  Scienter

Pipefitters argues that the district court examined each allegation of scienter in isolation rather than examining the allegations collectively. Pipefitters argues that the collective allegations, construed in its favor, "support a strong inference of severe recklessness, as or more likely and compelling than any competing inference of negligent mismanagement." Pipefitters Brief at 5. Pipefitters focuses on five specific alleged facts: (i) "defendants' admissions that Zale falsely accounted for advertising costs to an extent that materially impacted Zale's reported financial results for more than six years – in violation of Zale's own accounting policy"; (ii) "defendants' decision to entrust the accounting to a non-accountant marketing employee, blindly adopt the numbers she provided for SEC financial reports, and even falsify the numbers themselves"; (iii) "defendants' repeated public statements about Zale's focus on advertising and scrutiny of expenses – and their SOX certifications that the financial reports

were accurate"; (iv) "the common-sense simplicity of the accounting rule"; and (v) "defendants' motive, including unusual pressure to succeed, compromised auditors, and personal bonuses." *Id.*

Additionally, although Pipefitters relies heavily on the SEC's allegations against Higgins in attempting to establish fraud on Zale's part, Pipefitters argues that the district court erred in drawing an adverse inference based on the SEC's decision not to charge Higgins with fraud. The district court stated only that the SEC's decision not to charge Higgins with fraud "is consistent with" its finding that Higgins had not intended to commit fraud, R. 1213-14, and did not consider the SEC's charging decision as actual evidence of Higgins' lack of fraudulent intent. However, even assuming that the district court did rely on the SEC's charging decision and that was improper, we would affirm the district court's order. Even without considering the SEC's charging decision as evidence of lack of scienter, Pipefitters has not made a strong showing of scienter.

Pipefitters argues that "[t]he core component of Defendants' scienter was their severely reckless decision to blindly insert Higgins' suspicious numbers into Zale's formal accounting without any independent verification – and their intentionally fraudulent decision to record expenses as assets if they exceeded the expense budget." Pipefitters Brief at 41. Although Pipefitters argues that Defendants were "severely reckless in relying on Higgins' accounting of advertising costs," particularly because she was not an accountant, it contends elsewhere that "this was not complicated accounting." *Id.* at 23 & 41. We would not generally consider it to be "severely reckless" for Zale and its officers to rely on a Vice President in Zale's marketing depart to provide accurate information and follow company guidelines, and the facts alleged by Pipefitters do not show that it was reckless in this case.

Furthermore, although Pipefitters argues that "Zale's accounting staff literally faked numbers to match Higgins' internal forecasts," Pipefitters Brief

at 43, the actual allegations stated in the SEC complaint against Higgins and incorporated into Pipefitters' complaints suggest merely that the accounting department relied upon Higgins' representations as to when advertising costs should be expensed. Nor do Zale's after-the-fact admissions that it "did not maintain effective control over certain account reconciliations," *Id.* at 44, show that Zale or any of its officers acted with scienter in making the initial inaccurate financial statements. Additionally, although accounting policies were violated and inaccurate SOX certifications were signed by Zale officers, Pipefitters' allegations do not show that the Individual Defendants or other Zale officials responsible for Zale's public financial statements knew about the inaccurate information or recklessly ignored evidence of its falsity.

Pipefitters also places great weight on public statements made by top Zale officers during the Class Period. Pipefitters refers to statements to investors promising "good expense control," "financial rigor," and a "culture of cost discipline and accountability," as well as more specific statements suggesting that marketing and advertising expenses would come under scrutiny and become more efficient. Pipefitters Brief at 45-46. Pipefitters contends that, because Zale's officers were paying close attention to expenses, surely they noticed that Higgins' reported numbers were causing profits to be overstated and simply ignored this. However, the statements by Zale officials reasonably suggest that Zale wished to reduce advertising costs and make more efficient use of advertising dollars – not that Zale intended to double-check accounting figures submitted by high-level executives for accuracy.

Concerning the false advertising expenses submitted by Higgins, the district court found that the most compelling inference was that Higgins acted with the intent to maintain the good appearance of her department rather than to defraud investors by falsely inflating the value of Zale. We agree. Furthermore, Pipefitters has not attempted to challenge the district court's

No. 11-10936

finding that Higgins was not severely reckless to the possibility that her false information might cause Zale to release misleading financial statements, and we find no reason to dispute this conclusion.

## CONCLUSION

Because Pipefitters has not raised a strong inference that any of the three Individual Defendants, or any other Zale official responsible for the allegedly fraudulent financial statements, acted with scienter, the district court's order dismissing Pipefitters' complaint with prejudice is AFFIRMED.