Janice BONTON, Plaintiff,

v.

ARCHER CHRYSLER PLYMOUTH, INC., Defendant.

Civ. A. No. H–94–3886.

United States District Court, S.D. Texas.

June 9, 1995.

K.L. Krishnan, Houston, TX, for plaintiff.

Michael E. Warrick, Hudgins, Hudgins & Warrick, Houston, TX, for defendant.

## ORDER OF PARTIAL DISMISSAL AND REMAND

HUGHES, District Judge.

1. The court adopts the memorandum and recommendation of the United States Magistrate Judge signed May 11, 1995.

2. Janice Bonton's RICO claim against Archer Chrysler Plymouth, Inc. is dismissed with prejudice.

3. Bonton's claims for breach of contract, conversion, conspiracy, violation of the Texas Deceptive Trade Practices Act, and negligence are remanded to the 151st Judicial District Court of Harris County, Texas.

## MEMORANDUM AND RECOMMENDATION

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Archer Chrysler Plymouth, Inc.'s ("Archer") Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (# 2). Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court recommends that Archer's motion be granted.

### I. *Background.*

In October 1989, Plaintiff Janice Bonton's ("Bonton") vehicle, a 1987 Dodge Charger, was damaged by a fire in its electrical system. Bonton arranged to have her automobile towed to the service department of Archer to permit its employees to examine the vehicle, determine the cause and extent of damage, and provide Bonton an estimate of the cost of repairing the vehicle. After being informed that the cost of repair would exceed the market value of the automobile, Bonton requested Archer to postpone making any repairs. Bonton contends that Archer agreed to hold and safeguard the vehicle while Bonton tried to settle her dispute with Bridgestone/Firestone, Inc. ("Firestone"). Firestone had repaired the electrical wiring several days prior to the electrical system shorting out. According to Bonton, Archer informed her that the fire was caused by Firestone's improper repair of the electrical system.

Bonton was unable to settle her claims against Firestone, and on April 4, 1991, she filed suit in County Court at Law No. 1 in Fort Bend County, Texas, against Firestone ("County Court lawsuit"). After being advised that Archer could not locate her automobile in order to permit its inspection by Firestone, Bonton amended her pleadings to join Archer as an additional defendant. In September 1993, Firestone moved for dismissal of the claims against it on the basis that Firestone had not been provided the opportunity to inspect the vehicle after the suit had been filed. The court granted Firestone's motion and dismissed Bonton's claims against it. Consequently, Bonton amended her pleadings to assert that she had lost the opportunity to recover the damages that were owed to her by Firestone due to Archer's breach of its contract of bailment to store and safeguard her vehicle. Although the County Court lawsuit was scheduled for trial on October 19, 1994, one week prior to the trial setting, Bonton attempted to amend her pleadings to assert claims that Archer had violated the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The court, however, did not allow Bonton to amend to add the RICO claims. Bonton eventually non-suited the County Court lawsuit.

On October 17, 1994, Bonton filed her original petition in this action in the 151st Judicial District Court of Harris County, Texas, alleging civil conspiracy and claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d), stemming from the alleged taking of her automobile by Archer. Later that day, Bonton filed her first amended original petition, adding claims for breach of contract, conversion, violation of the Texas Deceptive Trade Practices Act, and negligence. Archer removed the case to this court on the basis of federal question jurisdiction. On November 15, 1994, Archer filed the instant motion to dismiss for failure to state a claim.

### II. *Analysis.*

#### A. *The Applicable Standard.*

A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or the merits of the case. In ruling on a motion to dismiss, the court must take the plaintiff's allegations as true, view them in a light most favorable to her, and draw all inferences in her favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284–85 (5th Cir.1993). The motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46,

78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). For purposes of this motion, the court accepts the facts alleged in the first amended original petition as true.

### B. *RICO.*

■ In 1970, Congress enacted RICO as Title IX of the Organized Crime Control Act to combat organized crime through both criminal prosecutions and private actions. 18 U.S.C. § 1961 *et seq.* The "legislative history forcefully supports the view that the major purpose of Title IX is to address the infiltration of legitimate business by organized crime." *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981). A private right of action is provided under 18 U.S.C. § 1964(c):

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Both the government and private plaintiffs may sue for violations of the substantive provisions of the statute. *Religious Technology Ctr. v. Wollersheim,* 796 F.2d 1076, 1080 (9th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987).

■ Under RICO, while four distinct offenses are declared to be unlawful, common elements are present in all four offenses. *See* 18 U.S.C. § 1962(a)–(d); *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453, 1461 (5th Cir.1991); *Ocean Energy II v. Alexander & Alexander, Inc.,* 868 F.2d 740, 742 (5th Cir.1989); *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). "Reduced to its three essentials, a civil RICO claim must involve: (1) a *person* who engages in (2) *a pattern of racketeering activity;* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise.*" *Calcasieu Marine Nat'l Bank,* 943 F.2d at 1461 (quoting *Delta Truck & Tractor, Inc.,* 855 F.2d at 242 (emphasis in original)); *see also Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, 434

(5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Smith v. Cooper/T. Smith Corp.,* 886 F.2d 755, 756 (5th Cir.1989); *Ocean Energy II,* 868 F.2d at 743.

In this case, Bonton alleges that Archer violated 18 U.S.C. § 1962(c) and (d) as the basis for recovery of damages under § 1964(c). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

Archer seeks dismissal of Bonton's RICO claim on the grounds that Bonton fails properly to plead the existence of an enterprise, a relationship between Archer and any RICO enterprise, a pattern of racketeering activity, fraud with particularity, or the existence of a conspiracy to violate RICO.

### 1. *Existence of an Enterprise.*

■ RICO defines "enterprise" very broadly. The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). There is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact. *Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527. A legitimate business entity, such as a corporation, may constitute an "enterprise." *United States v. Brown,* 583 F.2d 659, 663 (3d Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). An illegal organization also may be an enterprise for RICO purposes. *Turkette,* 452 U.S. at 580–81, 101 S.Ct. at 2527–28. In *Turkette,* the court stated that an enterprise is proved by "evidence of an ongoing organization, formal or

informal, and by evidence that the various associates function as a continuing unit." *Id.* at 583, 101 S.Ct. at 2528. In addition, the enterprise must be shown to have an existence "separate and apart from the pattern of activity in which it engages." *Id.* A plaintiff must plead specific facts, not mere conclusory allegations, to establish the enterprise. *Montesano,* 818 F.2d at 427.

■ In this case, Bonton asserts in ¶ 24 of her first amended petition that Archer "together with Robert Paul Archer, Paul Finnigan, and Aubrey Vincent conducted their affairs as a continuing enterprise affecting interstate commerce by selling, motor vehicles, parts, and services to the public, (the 'enterprise')." In describing Archer in the introductory paragraph, Bonton generally alleges that Archer is a Texas corporation doing business in Harris County, Texas. Additionally, Bonton asserts in ¶ 11 that at all relevant times, Archer was licensed in the State of Texas as a dealer of motor vehicles and held itself out to Bonton as an authorized Chrysler–Dodge–Plymouth dealer and service agent.

Section 1961(4) describes two categories of associations that come within the definition of an "enterprise." *Turkette,* 452 U.S. at 581, 101 S.Ct. at 2527–28. The first category encompasses organizations such as corporations and partnerships and other "legal entities," while the second category covers any union of individuals associated in fact although not a legal entity. *Id.* at 581–82, 101 S.Ct. at 2527–28. Here, Archer falls within the first category, as it is a recognized legal entity. Thus, Bonton has sufficiently pled Archer's existence as an enterprise.

### 2. *Separation between Enterprise and Racketeers.*

■ The term "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A corporation qualifies as a "person" and may be subject to RICO liability. *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 401 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The overwhelming weight of authority is that there must be a distinction between the RICO "person" and

the RICO "enterprise." *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 122 (5th Cir.1986) (citations omitted). In *Bishop,* the Fifth Circuit specifically adopted the reasoning of the Seventh Circuit in *Haroco, Inc.,* holding in line with the majority view, that § 1962(c) requires the person and the enterprise to be separate entities. *Bishop,* 802 F.2d at 123. "When the alleged § 1962(c) violator is a legal entity, such as a corporation, this required separation is not established merely by showing that the corporation, through its employees, officers, and/or directors, committed a pattern of predicate acts in the conduct of its own business." *Old Time Enter., Inc. v. International Coffee Corp.,* 862 F.2d 1213, 1217 (5th Cir.1989).

■ In the instant case, Bonton fails to distinguish Archer from the alleged RICO enterprise. Archer cannot constitute both the "person" who participates in an enterprise through a pattern of racketeering activity and the "enterprise" in which the person participates. *Bishop,* 802 F.2d at 123. Archer clearly is not employed by Archer; nor is it logical to say that Archer is associated with Archer. *See B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633 (3d Cir.1984). The language of the statute contemplates that the "person" must be associated with a separate "enterprise" before there can be RICO liability on the part of the "person." *Id.* Here, Bonton has failed to allege that the "person" and the "enterprise" are distinct.

### 3. *Pattern of Racketeering.*

#### a. *Racketeering Activity.*

■ "Racketeering activity" is defined in § 1961(1) in terms of a list of state and federal crimes. 18 U.S.C. § 1961(1). The individual acts of racketeering activity are usually described as the "predicate offenses." Section 1961(1)(A) specifies that racketeering activity means "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year." The state law felony offenses listed in

§ 1961(1)(A) are included by generic designation, and the test for determining whether particular acts fit into the generic category of predicate offense is whether the complaint alleges the type of activity generally known or characterized in the proscribed category. *See United States v. Forsythe,* 560 F.2d 1127, 1137 (3d Cir.1977) (citing *United States v. Nardello,* 393 U.S. 286, 295, 89 S.Ct. 534, 539, 21 L.Ed.2d 487 (1969)). Any act that does not fall within the purview of RICO's definition of predicate offenses is not an act of "racketeering activity." *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 793 F.Supp. 1114, 1136 (E.D.N.Y.1992).

In the case at bar, in ¶'s 25 and 26 of her first amended petition, Bonton alleges that on numerous dates Archer acquired or exercised control over money owned by the City of Houston without approval and with the intent to deprive the City of Houston of the property. As Archer correctly points out in its motion to dismiss, this allegation merely tracks the language of Chapter 31 of the Texas Penal Code, which defines the offense of theft.

▮▮▮▮▮ Bonton contends that Archer's allegedly unlawful conduct violated the criminal laws of the State of Texas, punishable by imprisonment for periods exceeding one year. Under RICO, however, acts that constitute theft under state law are not predicate acts for racketeering activity. *See Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 793 F.Supp. at 1136; *Jordan v. Berman,* 758 F.Supp. 269, 274 (E.D.Pa.1991). A plaintiff may not convert state law claims into a federal treble damage action simply by alleging that wrongful acts are a pattern of racketeering related to an enterprise. *King v. Lasher,* 572 F.Supp. 1377, 1382 (S.D.N.Y. 1983). Hence, Bonton's allegation that Archer committed the offense of theft in its dealings with the City of Houston cannot serve as a predicate act for RICO purposes.

In addition, Bonton alleges in ¶ 28 that Archer unlawfully appropriated her vehicle by converting the vehicle into component parts and disposing of such parts for the benefit of the enterprise. Bonton asserts that such conversion violated both the criminal laws of the State of Texas and 18 U.S.C. § 2321. Once again, Bonton appears to be asserting that Archer committed the offense of theft. As noted above, theft is not a state law offense that fits into the general categories set forth in § 1961(1)(A) as a RICO predicate act. *See Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 793 F.Supp. at 1136; *Jordan,* 758 F.Supp. at 274. Furthermore, Bonton does not specify the grounds upon which she alleges a violation of 18 U.S.C. § 2321. Section 2321 prohibits the purchase or acquisition of a motor vehicle or motor vehicle part, knowing that an identification number for such motor vehicle or part has been removed, obliterated, tampered with, or altered. Bonton, however, makes no assertion that the identification number on her automobile had been removed or altered at the time Archer acquired it.

Bonton further alleges in ¶ 30 that "defendant, members of the enterprise and persons employed by defendant schemed to defraud plaintiff of her vehicle by means of false or fraudulent pretenses, representations, or promises about safe guarding her vehicle in the conduct of the affairs of the enterprise. For the purpose of executing the scheme, defendant directed its employee Stan Gaskin to place in a post office depository a letter addressed to plaintiff and received by plaintiff in February–March, 1991 as mail to be sent by the Postal Service." Bonton alleges that "such act of using the Postal Service in furtherance of such a scheme" is a violation of 18 U.S.C. § 1341, the federal mail fraud statute.

▮▮▮▮▮ Section 1341 requires that (1) the defendant participate in a scheme or artifice to defraud, (2) the mails be used to execute the scheme, and (3) the use of the mails was "caused by" the defendant or someone else associated with the scheme. *United States v. Davis,* 752 F.2d 963, 970 (5th Cir.1985). A RICO claim asserting mail fraud as a predicate act must allege how each specific act of mail fraud actually furthered the fraudulent scheme, who caused what to be mailed when, and how the mailing furthered the fraudulent scheme. *Landon v. GTE Communications Servs., Inc.,* 696 F.Supp. 1213, 1217 (N.D.Ill. 1988). The mail fraud statute does not reach

every business practice that fails to fulfill expectations, every breach of contract, or every breach of fiduciary duty. *Marriott Bros. v. Gage,* 704 F.Supp. 731, 739 (N.D.Tex.1988) (citing *United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir.1980); *United States v. Goss,* 650 F.2d 1336, 1346 (5th Cir.1981)). "Rather, there must have been 'a recognizable scheme formed with specific intent to defraud.'" *Id.* (quoting *Goss,* 650 F.2d at 1346). In addition, the defendant must have made fraudulent representations or omissions reasonably calculated to deceive. *Id.* (citing *United States v. Finney,* 714 F.2d 420, 423 (5th Cir.1983)).

 Bonton's mail fraud allegation is deficient in that it neither describes the contents of the letter nor how it furthered or advanced the objective of the alleged scheme. Bonton merely states "[f]or the purpose of executing the scheme, defendant directed its employee Stan Gaskin to place in a post office depository a letter addressed to plaintiff...." Thus, the federal mail fraud statute cannot be used as a predicate act to support Bonton's RICO claims, as the second element of § 1341 has not been met.

b. *Pattern of Racketeering Activity.*

 Without regard to Bonton's failure to establish a predicate act, a RICO plaintiff must also establish that there was a "pattern of racketeering activity." *Delta Truck & Tractor, Inc.,* 855 F.2d at 242. A "pattern of racketeering activity," as required by § 1962(c), requires at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). Although at least two acts of racketeering are necessary to constitute a pattern, two acts may not be sufficient. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). RICO's legislative history leaves no doubt that "there is something to a RICO pattern beyond simply the number of predicate acts involved." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). "To prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900. The relatedness test is not a cumbersome one. A showing that predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events" is essentially all that is needed. *Id.* at 240, 109 S.Ct. at 2901.

 Continuity, however, is a more elusive concept. In *H.J., Inc.,* the court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2901–02. Continuity exists where the predicate acts constitute or threaten continued criminal activity. *Id.* at 240, 109 S.Ct. at 2901. The court listed several examples of what would establish a threat of continued racketeering: (1) the predicate acts inherently involve a distinct threat of long-term criminal activity; (2) the entity exists for the purpose of engaging in criminal activity; or (3) the predicate acts are a regular way of conducting an ongoing legitimate business. *Id.* at 242–43, 109 S.Ct. at 2902–03. Where the criminal scheme is not open-ended and has reached its fruition, continuity may be shown by proving that a series of related predicate acts extended over a substantial period of time. *Id.* at 242, 109 S.Ct. at 2902. A few weeks or months does not qualify as a substantial period of time. *Id.* Proof of multiple criminal schemes, however, is not necessary to show a pattern. *Id.*

 In the instant case, Bonton alleges in ¶ 27 of her first amended original petition that Archer "committed the acts comprising the charges in the conduct of the affairs of the enterprise." Bonton also alleges in ¶ 31 that "[t]he above described acts comprise a pattern of racketeering activity as the terms are defined in § 1961(1)(A), (B) & (5)." Such conclusory allegations and unwarranted deductions of fact are not admitted as true by a motion to dismiss. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992) (citing *Associated Builders, Inc. v. Alabama Power Company,* 505 F.2d 97, 100 (5th Cir.1974)). In order to avoid dismissal for failure to state

a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Id.* (citing *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989)). "A complaint which merely parrots the statute, without identifying the essential elements of a RICO claim, stands little chance of surviving a motion to dismiss." *Gold v. Wolpert,* 1987 WL 10585, *5 (N.D.Ill. May 1, 1987).

■ Here, Bonton has not sufficiently alleged a pattern of racketeering. Assuming, *arguendo,* that the acts alleged constitute "racketeering activity," the second essential RICO element cannot be established unless the acts establish a "pattern" of racketeering activity. Bonton does not allege, much less sufficiently plead, facts establishing a relationship between the alleged episodes of criminal activity. The alleged episodes have dissimilar purposes, results, victims, and methods of commission. Hence, the predicate acts asserted are merely isolated instances of wrongdoing directed at achieving separate and discrete goals, rather than related or connected acts that could rise to the required level of continuity. In addition, there is no allegation of an ongoing threat of continued criminal activity. Archer's acts, which allegedly deprived Bonton of a property interest, are completed and cannot be repeated, as, according to Bonton, the vehicle has already been converted. Short term criminal conduct is not a concern of RICO. *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this [the pattern] requirement." *Id.* Hence, there is no "pattern of racketeering activity" to support Bonton's RICO claim.

### 4. *Fraud.*

In addition, in her first amended petition, Bonton does not plead fraud with particularity, as required by the Federal Rules of Civil Procedure. "In all averments of fraud, or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This higher standard of pleading stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation. *Guidry,* 954 F.2d at 288.

■ Rule 9(b)'s particularity requirement applies to pleading fraud as a predicate act in a RICO claim. *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1138 (5th Cir.1992); *Landry,* 901 F.2d at 430; *Elliott,* 867 F.2d at 880; *Haroco, Inc.,* 747 F.2d at 405. To satisfy Rule 9(b), a plaintiff must at a minimum allege the " 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' " *Tel–Phonic Servs., Inc.,* 975 F.2d at 1139 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)); *see also Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984); *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980); *Bosse v. Crowell Collier & Macmillan,* 565 F.2d 602, 611 (9th Cir.1977).

■ In the instant case, Bonton's mail fraud allegation fails to allege the requisite intent for an offense under the mail fraud statute. "Although intent can be averred generally under Rule 9(b), a RICO mail fraud averment must nonetheless provide some 'factual basis for conclusory allegations of intent,' which must, in turn, give rise to a 'strong inference' of fraudulent intent." *Marriott Bros.,* 704 F.Supp. at 740 (quoting *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)). Such particularity is absent here. Bonton fails to describe the contents of the letter which was allegedly utilized to execute the scheme. Archer, therefore, is without notice of the nature of the allegedly false or fraudulent statements, by whom they were made, how Bonton was misled, or what Archer or anyone else obtained as a result of the alleged fraud. Moreover, Bonton fails to state how the letter furthered or advanced the objective of the alleged scheme. Accordingly, Bonton has failed to plead with sufficient particularity the mail fraud violation.

### 5. *Conspiracy Claim.*

■ Bonton alleges in the Sixth Count of her first amended petition that Archer violated § 1962(d), the conspiracy

section of RICO. A conspiracy to violate RICO is comprised of three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the conduct of the affairs of an enterprise; and (3) an overt act, which need not be a crime, in furtherance of the conspiracy. *See United States v. Sutherland*, 656 F.2d 1181, 1187 n. 4 (5th Cir.1981), *cert. denied*, 455 U.S. 949, 991, 102 S.Ct. 1451, 1617, 71 L.Ed.2d 663, 852 (1982). A RICO complaint "which merely implies, with the conclusory allegation of a conspiracy, that a defendant is responsible for someone else's fraudulent acts is insufficient." *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889, 895 (N.D.Ill.1987).

As discussed above, because Bonton has failed properly to allege a violation of § 1962(c), her § 1962(d) claim is without basis. However, without regard to this pleading deficiency, Bonton still does not properly allege a conspiracy claim against Archer. " '[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.' " *Tel–Phonic Servs., Inc.*, 975 F.2d at 1140 (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990)). Bonton fails to plead any such agreement to commit predicate acts of racketeering.

Hence, Bonton has not sufficiently pled the essential elements of a RICO claim. Bonton has failed to allege that the "person" and the "enterprise" are distinct entities as required by § 1962(c). In addition, Bonton has not established the requisite predicate acts of racketeering activity or a "pattern of racketeering activity." Finally, with regard to her § 1962(d) claim, Bonton has failed to plead any agreement to commit predicate acts of racketeering. Accordingly, Bonton's claims under § 1962(c) and (d) should be dismissed.

### C. *Pendent Jurisdiction.*

Bonton alleges a number of state law claims, *i.e.*, breach of contract, conversion, conspiracy, violation of the Texas Deceptive Trade Practices Act, and negligence.

Pendent jurisdiction is a discretionary doctrine which allows a party to try in one judicial proceeding all claims arising out of a "common nucleus of operative fact" where to do so would promote judicial economy and convenience. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The justification for pendent jurisdiction

> lies in consideration of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. (Footnotes and citations omitted.)

*Id.* at 726, 86 S.Ct. at 1139. *Gibbs* does not establish a bright-line rule for pendent jurisdiction, but calls for a more flexible analysis, balancing the values of economy, convenience, fairness, federalism, and comity. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.1992) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 619 & n. 7, 98 L.Ed.2d 720 (1988)). When a single federal law claim is eliminated at an " 'early stage' " of the litigation, however, the district court has " 'a powerful reason to choose not to continue to exercise jurisdiction.' " *Id.* (quoting *Carnegie–Mellon Univ.*, 484 U.S. at 351, 108 S.Ct. at 619–20). Moreover, " 'when a court has discretionary jurisdiction over a removed state-law claim and the court chooses not to exercise its jurisdiction, remand is an appropriate alternative.' " *Administaff, Inc. v. Kaster*, 799 F.Supp. 685, 689 (W.D.Tex.1992) (quoting *Carnegie–Mellon Univ.*, 484 U.S. at 354–55, 108 S.Ct. at 621–22).

Here, because the single federal claim should be dismissed at this early stage of the proceedings, the state law claims

should be remanded to the 151st Judicial District Court of Harris County, Texas. The state court provides a preferable forum for deciding these state law issues.

### D. *Local Rules.*

■ The Local Rules of the United States District Court for the Southern District of Texas regulate civil pretrial motion practice in this court. Specifically, Local Rule 6(E) provides that a failure to respond to a motion will be taken as a representation of no opposition. In this case, Archer filed its motion to dismiss on November 15, 1994. As of today, some six months later, Bonton has not responded to Archer's motion. Therefore, under Local Rule 6(E), Archer's motion to dismiss is deemed to be unopposed. Unopposed motions are routinely granted, and this court can discern no reason for failing to grant the instant motion.

### III. *Conclusion.*

This court recommends that Archer's motion to dismiss be granted with prejudice as to the RICO claim and that Bontons' remaining claims be remanded to the 151st Judicial District Court of Harris County, Texas, as they are grounded solely on state law.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties. Under Fed.R.Civ.P. 72, the parties have ten days from receipt to file specific, written objections to the Memorandum and Recommendation. Failure to file objections bars an attack on the factual findings on appeal. The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208–1010. Copies of the objections must be mailed to the opposing parties and to the chambers of the magistrate judge, P.O. Box 610070, Houston, Texas 77208.

May 11, 1995.